**R. Michael WARD and Terre Ward, Plaintiffs,**

v.

**ALLSTATE INSURANCE COMPANY, et al., Defendants.**

**No. CV 97–1442 JGD (RNBx).**

United States District Court, C.D. California.

May 12, 1997.

Howard A. Snyder, Calabasas, CA, Gruber & Kantor, Daniel S. Gruber, Glendale, CA, for Plaintiffs.

Sonnenschein Nath & Rosenthal, Ronald D. Kent, Henry S. Zangwill, Kathleen E. Bailey, Los Angeles, CA, for Defendants.

ORDER DENYING DEFENDANT ALL-STATE'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, FOR PARTIAL SUMMARY ADJUDI-CATION OF THE CLAIMS FOR TOR-TIOUS BREACH OF CONTRACT AND PUNITIVE DAMAGES

DAVIES, District Judge.

On May 5, 1997, Defendant Allstate's Motion for Summary Judgment or, Alternatively, for Partial Summary Adjudication of the Claims for Tortious Breach of Contract and Punitive Damages, came on for hearing. After careful consideration of the written submissions of the parties, and the oral argument of counsel, the Court hereby DENIES the Motion.

*Background*

The Plaintiffs in this case are two home owners who had taken out a property insurance policy with Defendant Allstate Insurance Company. The dispute is over insurance coverage for damages incurred by the Plaintiffs as a result of the Northridge earthquake, which occurred on January 17, 1994. The Complaint was filed in state court on January 17, 1997. Thereafter, Allstate removed the action to this Court.

There is no question' that the operative policy contained a provision stipulating that "[a]ny suit or action must be brought within one year of the date of loss." Sapers Decl. Ex. 1. The Plaintiffs submitted a claim on January 3, 1995, within the one year period. At that time, Allstate sent an investigator to the Plaintiffs' residence. A written report documenting the damage was prepared, stat-ing that damage of approximately $20,000 had been suffered. Sapers Decl. Ex. 2. On January 28, 1995, Allstate paid the Plaintiffs $7,054.17 for covered losses they had incurred. Sapers Decl. Ex. 3. Subsequently, on April 10, 1995, Allstate issued another check to the Plaintiffs, in the amount of $4,270.29, to cover earthquake damage to their personal property. Sapers Decl. Ex. 8.

The Plaintiffs apparently relied on the report of the Allstate investigator as to the extent of the damage. Plaintiff R. Michael Ward is a quadriplegic and, therefore, was unable to personally inspect all areas of the property. Plaintiff Terre Ward apparently did not inspect the property after the claim was reported to Allstate. Nonetheless, the Plaintiff R. Michael Ward was assured by Allstate's adjustor, Defendant Sanchez, that he was a qualified expert and the Plaintiff trusted the report of Mr. Sanchez. Ward Decl. ¶¶ 5, 6. However, in late 1995, the Plaintiffs learned that their home had suffered greater damage than Mr. Sanchez had led them to believe, including damage to the foundation. Ward Decl. ¶ 7, 10.

Based on this new knowledge, the Plaintiffs contacted Allstate to report the newly discovered damage. The Plaintiffs obtained the services of Unity Adjustments to help establish the full extent of their loss. Unity sent two letters to Allstate on or about January 31, 1996, advising Allstate of its role in the matter. Sapers Decl. Ex. 4, 5. On April 26, 1996, Allstate wrote a letter to Unity. Sapers Decl. Ex. 6. Thereafter, on June 6, 1996, Allstate sent another letter to Unity, "formally notifying you that there is no coverage for your client's earthquake claim." Sapers Decl. Ex. 7.

The Complaint alleges causes of action for (1) breach of the duty of good faith and fair dealing, (2) breach of contract, (3) negligence, (4) fraud, and (5) injunctive relief pursuant to Business and Professions Code section 17200. The Plaintiffs estimate the actual damage to their home to be in the sum of approximately $185,000. Gluchacki Decl. ¶ 4.

*Discussion*

A. *Summary Judgment Standard*

The Federal Rules of Civil Procedure provide for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court clarified the standard for summary judgment in three important cases. See *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. Whether a fact is material is determined by looking to the governing substantive law; a fact is material if it may affect the outcome of the suit. *Id.* at 248, 106 S.Ct. at 2510. If the moving party seeks summary adjudication with respect to a claim or defense upon which it bears the burden of proof at trial, its burden must be satisfied by affirmative admissible evidence. By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case. *See Celotex*, 477 U.S. at 325, 106 S.Ct. at 2553–54; *see also* Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial §§ 14:123–141 (1993).

When the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. Rule 56(e). Summary judgment will be entered against the non-moving party, when appropriate, if that party does not present these specific facts. *Id.*

In assessing whether the non-moving party has raised a genuine issue, its evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14 (citing *Adickes v. S.H. Kress and Company*, 398

U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). Nonetheless, "the mere existence of a scintilla of evidence" is insufficient. *Id.* at 252, 106 S.Ct. at 2512. As the Court explained in *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1356:

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial.",

However, an alleged "genuine issue" will not defeat summary judgment where the factual context makes the non-movant's allegations implausible. *See California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987). Consequently, where the factual context makes the non-movant's claim implausible, the non-movant "must come forward with more persuasive evidence to support their claim than would otherwise be necessary" to show that there is a genuine issue for trial. *Id.*

**B.   *Application of the Standard***

### 1.   *The Breach of Insurance Contract Claim*

Allstate argues that the action is barred, in its entirety, by the one-year limitations provision in the policy. Specifically, the policy provides that "[a]ny suit or action must be brought within one year after the loss." Sapers Decl. Ex. 1 at 28. Allstate argues that the date of loss was the date of the earthquake, January 17, 1994, and, since the Plaintiffs did not file suit until nearly three years later, the suit cannot be maintained.

The key issue with regard to the instant Motion is when the one-year limitation begins to run. Both parties agree that the governing standard was articulated by the California Supreme Court in *Prudential–LMI Commercial Insurance v. Superior Court*, 51 Cal.3d 674, 274 Cal.Rptr. 387, 798 P.2d 1230 (1990). In that case, the court directly addressed the issue of when a one-

year limitation in an insurance policy begins to run. Specifically, the court held:

> The insured's suit on the policy will be deemed timely if it is filed within one year after "inception of the loss," defined as that point in time when appreciable damage occurs and is or should be known to the insured, such that a reasonable insured would be aware that his notification duty under the policy has been triggered.
>
> To take advantage of the benefits of a delayed discovery rule, however, the insured is required to be diligent in the face of discovered facts.... Determining when appreciable damage occurs such that a reasonable insured would be on notice of a potentially insured loss is a factual matter for the trier of fact.

*Id.* at 686–87, 274 Cal.Rptr. 387, 798 P.2d 1230.

■ In raising the policy limitation as a defense, the Defendant has the burden of proving the Plaintiffs' unreasonableness by a preponderance of the evidence. *Id.* at 687, 274 Cal.Rptr. 387, 798 P.2d 1230. There is no reason in this case to conclude, as a matter of law, that the Plaintiffs were not diligent in the face of discovered facts. The initial claim made by the Plaintiffs was timely. Upon discovery of further damage in late 1995, the Plaintiffs immediately engaged their own adjustor and contacted Allstate in January, 1996.

■ The only issue is as to the tolling of the limitations period expressed in the policy. It is Allstate's argument that the appreciable damage occurred on the date of the earthquake, January 17, 1994, and the limitations period started running as of that date. The Plaintiffs made a claim on January 3, 1995, 350 days after the statute had begun. The statute was tolled, at most, from January 3, 1995 to June 6, 1996, the time at which Allstate formally informed the Plaintiffs that it would provide no further coverage for the earthquake damage.[1] At that point, according to Allstate's calculations, the Plaintiffs had fifteen days within which to file suit. Since the Plaintiffs did not file suit until over seven months later, the suit is barred.

Allstate's argument is unpersuasive. *Prudential–LMI* makes it clear that the relevant inquiry is when a reasonable insured would discover appreciable loss, and, furthermore, that this matter must typically be resolved by the trier of fact. It is simply disingenuous for Allstate to argue that the more substantial damage suffered by the Plaintiffs was appreciable by a reasonable insured as of January 17, 1994, when Allstate's own adjustor, a purported expert, apparently did not notice the damage in January 1995. Allstate cannot be heard to argue that the damage was appreciable to a layperson or that a layperson could reasonably be expected to be aware of damage that was not discovered by an expert one year later.[2]

The Plaintiffs assert that it was reasonable for them to rely on the report of Mr. Sanchez and not do any independent investigation. Given that fact, the Plaintiffs argue that it was reasonable for them not to have discovered the more extensive damage until, by sheer fortuity, a maintenance worker noticed it in late 1995. At that time, the Plaintiffs made what was essentially a new claim with Allstate in January 1996. The statute was

---

1. Allstate actually argues that the tolling ended at the time payments were made to the Plaintiffs in 1995, because "Plaintiffs ... subjectively understood that, upon tender of the Claim Report and settlement drafts in 1995, Allstate believed this claim to be resolved." Mot. at 3. There is no evidence to support this contention. The settlement drafts do not indicate on their respective faces that they are to be in final settlement of all damage, discovered or undiscovered, caused by the earthquake. Thus, at this stage, this argument is completely unavailing and the Court must assume the statute was tolled until June 6, 1996.

2. Allstate relies on the Court's recent disposition of *Hill v. Allstate Insurance Co.,* 962 F.Supp. 1244 (C.D.Cal.1997), where summary judgment was granted in favor of Allstate on the plaintiff's claim for coverage of earthquake damage. The instant case is totally unlike *Hill.* In order for *Hill* to be apposite, the plaintiff in *Hill* would have had to timely inform Allstate that he suffered damage, Allstate would have had to send an adjustor to the property who then gave the plaintiff a gross underestimation of the damage, and the plaintiff would then have had to rely on that representation such that the limitations period lapsed. None of these events transpired in *Hill.*

tolled from January 1996 until June 6, 1996, thus making the Complaint, filed on January 17, 1997, timely.

The Plaintiffs, at the very least, have raised triable issues of fact with regard to the reasonableness of their actions. If Allstate's position were adopted, the Plaintiffs would be made to suffer for their reliance on Allstate's adjustor and punished for not disbelieving Allstate's adjustor, who represented himself as an expert. That is, Allstate is arguing that it was unreasonable, as a matter of law, for the Plaintiffs to rely on the statements of Allstate's adjustor. Whether the Plaintiffs' actions in this case were reasonable should be decided by the trier of fact.

Finally, even assuming that Allstate is technically correct in its calculations such that the claim made in January 1996 was not a new and separate claim, and, consequently, the instant suit cannot be deemed timely, the doctrine of estoppel would still allow this case to proceed. In *Prudential–LMI*, the court explained:

> An estoppel "arises as a result of some conduct by the defendant, relied on by the plaintiff, which induces the belated filing of the action." According to Witkin, "[t]he estoppel cases appear to fall roughly into three classes: (1) Where the plaintiff is aware of his cause of action and the identity of the wrongdoer, but the latter by affirmative acts induces the plaintiff to refrain from suit. (2) Where the plaintiff is unaware of his cause of action and his ignorance is due to false representations by the defendant. (3) Where the plaintiff is unaware of the identity of the wrongdoer and this is due to fraudulent concealment by the defendant."

51 Cal.3d at 689–90, 274 Cal.Rptr. 387, 798 P.2d 1230 (citations omitted).

■ In this case, after the Plaintiffs had submitted a timely claim to Allstate, they relied on the representations of Mr. Sanchez, a purported expert and agent of Allstate, that their damage was limited to approximately $20,000. For this reason, the Plaintiffs allowed the limitations period to elapse without conducting a further investigation. This is precisely the type of situation contemplated by the estoppel doctrine. Allstate

cannot be allowed to lull the Plaintiffs into sleeping on their rights, and then use the limitations period as a sword to cut down their claims. Moreover, even assuming that Mr. Sanchez innocently underestimated the damage, it is of no moment, as an insurer is estopped from asserting a right, even though it did not intend to mislead, as long as the insured reasonably relied to its detriment upon the insurer's action. *See Chase v. Blue Cross of California*, 42 Cal.App.4th 1142, 1157, 50 Cal.Rptr.2d 178 (1996); *Waller v. Truck Insurance Exchange, Inc.*, 11 Cal.4th 1, 34, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995).

### 2. The Tort Claims

■ Allstate argues that the Plaintiffs' tort claims are also barred by the one year statute of limitations because they are actions "on the policy." While there is a split of authority in California as to whether the limitations period in the policy governs tort claims arising in the insurance context, it is clear that the doctrines of equitable tolling and estoppel apply to these types of claims in any event. *See* Croskey & Kaufman, Insurance Litigation §§ 12:1149–12:1162 (1996). Therefore, based on the above discussion, there are genuine issues of material fact with regard to the reasonableness of the Plaintiffs' actions.

■ Alternatively, Allstate argues that, regardless of whether the limitations period bars the bad faith claim, the claim must be dismissed as a matter of law. In order to impose tort liability, the Plaintiffs must establish that Allstate failed to provide policy benefits "without proper cause." *California Shoppers. Inc. v. Royal Globe Insurance Co.*, 175 Cal.App.3d 1, 54–55, 221 Cal.Rptr. 171 (1985). When an insurer denies coverage due to a good faith coverage dispute, no action for bad faith will lie even if the insurer ultimately turns out to be wrong. *See Opsal v. U.S.A.A.*, 2 Cal.App.4th 1197, 1205–06, 10 Cal.Rptr.2d 352.

■ Erroneous withholding of policy benefits resulting from failure to investigate the claim thoroughly may constitute bad faith. As the court in *Egan v. Mutual of Omaha Insurance Co.*, 24 Cal.3d 809, 819,

169 Cal.Rptr. 691, 620 P.2d 141 (1979), explained, "an insurer cannot reasonably and in good faith deny payments to its insured without thoroughly investigating the foundation for its denial." In this case, the Plaintiffs assert that, quite literally, Allstate did not thoroughly investigate the foundation. There are triable issues as to whether the Allstate adjustor conducted a thorough investigation of the Plaintiffs' claim and, therefore, the Motion is denied as to this issue.[3]

### 3. *Punitive Damages*

■ Finally, Allstate argues that there is no evidence in this case to support a claim for punitive damages. To support an award for punitive damages, the Plaintiff must show that the Defendant's conduct went beyond bad faith. That is, the Plaintiff must prove "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ.Code § 3294(a). A claim for punitive damages is not established merely by evidence that the insurer behaved unreasonably. *See Beck v. State Farm Mutual Automobile Insurance Co.,* 54 Cal.App.3d 347, 356, 126 Cal.Rptr. 602 (1976).

All three types of conduct identified above might be implicated in this case. Oppression is conduct that "subjects a person to cruel and unjust hardship in conscious disregard of that person's rights," fraud is "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving the person of property or legal rights or otherwise causing injury," and malice is conduct that "is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ.Code § 3294(c).

■ The Plaintiffs have at least raised the possibility that Mr. Sanchez deliberately misrepresented the amount of damage they had suffered in order to generate a lower settlement and lull them to sleep on their right to sue until after the limitations period

had expired. This is a matter for the trier of fact. If such behavior is established, punitive damages may well be warranted. The Motion is denied as to this issue.

### *Conclusion*

For the foregoing reasons, Allstate's Motion for Summary Judgment or, Alternatively, for Partial Summary Adjudication of the Claims for Tortious Breach of Contract and Punitive Damages is denied.

IT IS SO ORDERED.

---

**3.** Deceptive practices, including misrepresentations, can also be a basis for imposing tort liability for bad faith. *See Delos v. Farmers Insurance Group,* 93 Cal.App.3d 642, 664, 155 Cal.Rptr. 843 (1979).