[No. B174036. Second Dist., Div. Three. Sept. 19, 2005.]

DOHENY PARK TERRACE HOMEOWNERS ASSOCIATION, INC.,
Plaintiff and Appellant, v.
TRUCK INSURANCE EXCHANGE, Defendants and Respondents.

1078

COUNSEL

Parisi Law Firm, David C. Parisi, Suzanne Havens Beckman; Law Offices of Bernie Bernheim, Bernie Bernheim and Joshua Haffner for Plaintiff and Appellant.

Horvitz & Levy, Lisa Perrochet, Lisa R. Jaskol; Shea Stokes & Carter and Jeffrey J. Leist for Defendants and Respondents.

## OPINION

**CROSKEY, J.**—Plaintiff Doheny Park Terrace Homeowners Association, Inc. (Doheny Park), appeals from the trial court's order dismissing its first amended complaint. The defendant, Truck Insurance Exchange (Truck),[1] had demurred to Doheny Park's pleading and the trial court sustained that demurrer without leave to amend. The trial court concluded that Doheny Park had not filed its action within the two-year contractual limitation period specified in Truck's policy, or during the revival period established by Code of Civil Procedure, section 340.9. In addition, Doheny Park had failed to plead facts sufficient to establish a basis for application of the doctrine of equitable estoppel precluding Truck from asserting a limitations defense.

We have reviewed the record, including Doheny Park's first amended complaint, and concur with the trial court that Doheny Park did not timely file its action, either within the original two-year period or during the one-year statutory revivor. We disagree, however, that it failed to plead sufficient facts to raise the bar of equitable estoppel. We will, therefore, reverse and remand for further proceedings.

### *FACTUAL AND PROCEDURAL BACKGROUND*[2]

Doheny Park is a condominium association involving 21 units located in the City of Beverly Hills, California. Its property was damaged by the Northridge earthquake on January 17, 1994. On that date, Doheny Park was insured by Truck and the policy included coverage for earthquake damage, subject to a deductible. Before the end of January 1994, Doheny Park submitted claims for damage to Truck.

After conducting an inspection of the damage to the Doheny Park property, Truck concluded that such damage was in the sum of $36,489.02. This amount was less than the deductible in Truck's policy, so Doheny Park's claim was denied.[3]

---

[1] The action filed by Doheny Park had also named as defendants, Farmers Group, Inc., Farmers Insurance Exchange, Truck Underwriters Association and Mid-Century Insurance Company. None of these other insurer defendants, however, are parties to this appeal.

[2] As this case comes to us following the sustaining of a demurrer, the relevant facts that we recite are those set forth in Doheny Park's first amended complaint, which we must accept as true. In light of the fact that Doheny Park's appeal turns upon the sufficiency of its allegations, we consider them in greater detail in the Discussion part of this opinion.

[3] This is a conclusion with which Doheny Park does not agree. It argues that Truck never *formally* denied its claim and thus it remains open. As we discuss below, that argument is without merit.

Doheny Park took no further action with respect to its claim until February 2003. At that time, it met with its counsel who recommended retention of an expert. Following that expert's inspection of the property, Doheny Park learned that the damage caused by the Northridge earthquake was more extensive and, in fact, *exceeded* the amount of the policy deductible. In April 2003, Doheny Park commenced this action against Truck alleging four causes of action: breach of contract, breach of the implied covenant of good faith and fair dealing, fraud and violation of Business and Professions Code, section 17200.[4]

Truck filed a demurrer to the complaint alleging that the action was untimely.[5] More than eight years had elapsed from the date that Doheny Park had sustained damage until the time that it filed suit. The trial court held that Doheny Park's action had not been timely filed and, in any event, Code of Civil Procedure, section 340.9,[6] precluded any action by Doheny Park after December 31, 2001. Truck's demurrer was sustained with leave to amend and, on or about October 1, 2003, Doheny Park filed its first amended complaint, the operative pleading herein.

Truck again demurred, arguing that the applicable limitations period had run and that Doheny Park had not pled sufficient facts to justify either (1) its delay in filing the action, or (2) the application of the doctrines of delayed

---

[4] We do not discuss this last alleged cause of action, as Doheny Park voluntarily dismissed it prior to the entry of the order of dismissal that is the subject of this appeal.

[5] It appears that Truck's policy (which was attached as an exhibit to Doheny Park's complaint) provided for a *two-year* contractual limitations period.

[6] Unless otherwise indicated, all statutory references are to the Code of Civil Procedure. Section 340.9 provides as follows:

"(a) Notwithstanding any other provision of law or contract, any insurance claim for damages arising out of the Northridge earthquake of 1994 which is barred as of the effective date of this section solely because the applicable statute of limitations has or had expired is hereby revived and a cause of action thereon may be commenced provided that the action is commenced within one year of the effective date of this section. This subdivision shall only apply to cases in which an insured contacted an insurer or an insurer's representative prior to January 1, 2000, regarding potential Northridge earthquake damage.

"(b) Any action pursuant to this section commenced prior to, or within one year from, the effective date of this section shall not be barred based upon this limitations period.

"(c) Nothing in this section shall be construed to alter the applicable limitations period of an action that is not time barred as of the effective date of this section.

"(d) This section shall not apply to either of the following:

"(1) Any claim that has been litigated to finality in any court of competent jurisdiction prior to the effective date of this section.

"(2) Any written compromised settlement agreement which has been made between an insurer and its insured where the insured was represented by counsel admitted to the practice of law in California at the time of the settlement, and who signed the agreement."

discovery, equitable tolling or equitable estoppel which would preclude Truck from successfully asserting a limitations defense. The trial court sustained Truck's demurrer, this time *without* leave to amend. The court held that section 340.9 set an absolute deadline for Doheny Park's action of December 31, 2001 and contained no provision for delayed discovery (see fn. 6, *ante*). It concluded that the only way Doheny Park could allege a viable claim was to set forth sufficient facts demonstrating that Truck was equitably estopped under the principles set out in *Vu v. Prudential Property & Casualty Ins. Co.* (2001) 26 Cal.4th 1142 [113 Cal.Rptr.2d 70, 33 P.3d 487] (*Vu*). After reviewing the new allegations submitted by Doheny Park, the court concluded that they "again fall short."

Thereafter, on February 5, 2004, an order of dismissal was entered and filed. Doheny Park has prosecuted this timely appeal.

## CONTENTIONS OF THE PARTIES

Doheny Park's principal contention is that the allegations of the first amended complaint sufficiently set forth a basis for applying the doctrine of equitable estoppel as articulated by the Supreme Court in *Vu*. It also urges that it is not bound by the limitation of the one-year revival window opened by section 340.9 and that its knowledge of the rationale for, or the passage of, that statute did not trigger any duty of inquiry. Doheny Park further urges that it is entitled to the benefit of the delayed discovery rule because, due to misrepresentations and concealment by Truck, it did not reasonably discover the full extent of its damage until February 2003. It also asserts the related argument that the limitation period was equitably tolled because Truck never *unequivocally* denied Doheny Park's claim *in writing* as required under the principles set out in *Prudential-LMI Com. Insurance v. Superior Court* (1990) 51 Cal.3d 674 [274 Cal.Rptr. 387, 798 P.2d 1230] (*Prudential-LMI*). Finally, Doheny Park argues that the trial court improperly denied it an opportunity to file a second amended complaint so as to add certain additional allegations.[7]

Truck asserts that none of these arguments justifies a reversal of the order of dismissal. The policy provided for a two-year limitation period from the date that Doheny Park discovered (or should have discovered) damage from the Northridge earthquake. Doheny Park waited over eight years after it sustained damage, and over a year after the revival deadline set out in section 340.9 before filing its action. Truck argues that Doheny Park is relying on

---

[7] In view of the decision we reach herein, it is not necessary for us to reach or discuss this procedural issue. Upon remand, the trial court may, in the exercise of its discretion, permit such further amendment of Doheny Park's pleadings as may be appropriate.

nothing but conclusionary and argumentative allegations to justify this extraordinary delay. Truck also argues that, in any event, section 340.9 establishes an absolute deadline (December 31, 2001) for the pursuit of *any* claim arising from the Northridge earthquake; Doheny Park cannot avoid that deadline by reliance on either the equitable estoppel or delayed discovery doctrines.

## DISCUSSION

### 1. *Standard of Review*

In reviewing an order sustaining a demurrer without leave to amend, the appellate court decides de novo whether the complaint sets forth facts sufficient to state a cause of action. (*Hoffman v. State Farm Fire & Casualty Co.* (1993) 16 Cal.App.4th 184, 189 [19 Cal.Rptr.2d 809].) The court looks to the face of the complaint and treats the demurrer as admitting all the material facts alleged. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) However, the appellate court does not assume the truth of contentions, deductions, or conclusions of fact or law. (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125 [271 Cal.Rptr. 146, 793 P.2d 479].) It is only necessary for a plaintiff to plead *ultimate* facts. (*Perkins v. Superior Court* (1981) 117 Cal.App.3d 1, 6 [172 Cal.Rptr. 427].[8])

### 2. *Doheny Park's Policy Imposed a Two-year Contractual Limitation Period That Commenced To Run on the Date of the Northridge Earthquake and Its Delayed Discovery Argument Fails*

The ordinary statute of limitations for breach of a written contract is four years from the date of the breach. (§ 337). When the contract is a policy of insurance (e.g., a homeowners policy) and the insured has a property damage claim, there is a *contractual* limitation period imposed by the terms of the policy. In the case of fire policies, the limitation period is one year, as dictated by Insurance Code, section 2071 (setting out the terms that must be included in the standard form fire policy).[9] Such a shortened limitation period has long been recognized as valid in California. (*Prudential-LMI, supra,* 51 Cal.3d at p. 683.)

---

[8] We discuss in more detail below the relevant principles relating to the pleading of ultimate facts versus evidentiary matters.

[9] When, as in this case, the policy insures against other perils as well as fire loss, the terms of the policy may vary as long as the coverage provided is equivalent or more favorable to the insured. (Ins. Code, § 2070; *Fire Ins. Exchange v. Superior Court* (2004) 116 Cal.App.4th 446, 459 [10 Cal.Rptr.3d 617].) Thus, the inclusion in the Doheny Park policy of a *two*-year limitation period did not violate Insurance Code, section 2071, as it was more favorable to the insured.

■ Under Insurance Code, section 2071, the limitation period commences to run from the *inception of the loss*. That term has been construed to mean "that point in time when appreciable damage occurs and is or should be known to the insured, such that a reasonable insured would be aware that his notification duty [i.e., the duty to notify the insurer of a covered loss] under the policy has been triggered." (*Prudential-LMI, supra,* 51 Cal.3d at p. 687.)

This rule applies even in the case of a single catastrophic event. (*Kapsimallis v. Allstate Ins. Co.* (2002) 104 Cal.App.4th 667, 670 [128 Cal.Rptr.2d 358] ["the analysis in *Prudential-LMI* . . . is fully applicable to cases involving cataclysmic damage such as the Northridge earthquake and precludes determining 'inception of the loss' solely by the date of the occurrence of the physical event causing the loss".] "Determining when appreciable damage occurs such that a reasonable insured would be on notice of a potentially insured loss is a factual matter for the trier of fact. . . . The insurer has the burden of proving those allegations by a preponderance of the evidence." (*Prudential-LMI, supra,* 51 Cal.3d at p. 687.) Thus when appreciable damage has occurred is an issue that is difficult to resolve on summary judgment. (*San Jose Crane & Rigging, Inc. v. Lexington Ins. Co.* (1991) 227 Cal.App.3d 1314, 1316 [278 Cal.Rptr. 301].)

This principle, established by *Prudential-LMI,* constitutes a delayed discovery rule. Its application, however, is subject to several conditions. "[T]he insured is required to be diligent in the face of discovered facts. The more substantial or unusual the nature of the damage discovered by the insured (e.g., the greater its deviation from what a reasonable person would consider normal wear and tear), the greater the insured's duty to notify his insurer of the loss promptly and diligently. [Citation.]" (*Prudential-LMI, supra,* 51 Cal.3d at p. 687.) Once any damage becomes reasonably apparent the time begins to run, even if the full extent of the damage is unknown. "The inception of the loss occurs when the insured should have known that *appreciable damage* had occurred, not when the homeowner learned the true extent of the damage." (*Campanelli v. Allstate Life Ins. Co.* (9th Cir. 2003) 322 F.3d 1086, 1094, italics added [applying California law].) In addition, the occurrence of "appreciable damage" does not depend upon discovery that the damage constitutes a covered loss under an all-risk policy (e.g., the "inception of the loss" is not delayed until the insured learns from an attorney that the damage might be covered). (*Larkspur Isle Condominium Owners' Assn. v. Farmers Ins. Group* (1994) 31 Cal.App.4th 106, 111–112 [37 Cal.Rptr.2d 3]; see also *Lawrence v. Western Mutual Ins. Co.* (1998) 204 Cal.App.3d 565, 573 [251 Cal.Rptr. 319] [it is the occurrence of some cognizable event rather than the knowledge of its legal significance that starts the running of time to sue].)

Two examples will illustrate the point. In *Magnolia Square Homeowners Assn. v. Safeco Ins. Co.* (1990) 221 Cal.App.3d 1049 [271 Cal.Rptr. 1], the insured became aware in 1985 of *possible* structural defects in its property and sued the developer accordingly. It was not until 1986, however, that the insured's experts opened up certain walls and verified the structural problems. In 1987, the insured sued its insurer under an all-risk property policy. The suit was barred because the policy required suit " 'within one year after the loss occurs.' " (*Id.* at p. 1058.) The insured may not have known the full extent of the problem in 1985 (when it sued the developer), but it knew enough that it "should have conducted further investigation to determine the scope of the structural problem." (*Id.* at p. 1060.)

In *Sullivan v. Allstate Ins. Co.* (C.D.Cal. 1997) 964 F.Supp. 1407, the insureds made no claim for damage to their home after the Northridge earthquake because they thought the repair costs would be less than the deductible. They left the home unrepaired for more than a year, during which time the house began to leak, exacerbating the earthquake damage. When they discovered it would cost $50,000 to repair the damage, they submitted a claim to their insurer. The court held that the claim was barred under the policy's one-year suit limitation because the insureds were aware of appreciable damage from the outset (even though they underestimated its cost). It was not a " 'progressive loss' " merely because they allowed their property to deteriorate. (*Id.* at p. 1412.)

These cases articulate principles that dispose of Doheny Park's delayed discovery argument. By its own allegations, it knew that sufficient damage had been done to warrant notification of the damage to Truck. That started the running of the two-year period in which to commence an action against Truck. Admittedly, Doheny Park did not file any action during that period nor (as we discuss below) during the one-year revivor period established by section 340.9.

### 3. The Running of the Contractual Limitations Period Was Not Equitably Tolled

■ As discussed above, the contractual limitations period commences to run upon the inception of loss. The running of this period, however, may be tolled during the period that the claim is being considered by the insurer. Put another way, the limitations period will be tolled "from the time the insured files a *timely notice*,[10] pursuant to policy notice provisions, to the time the

---

[10] The statute (Ins. Code, § 2071) mandates that the policy provide that insured give written notice to the insurer "without unnecessary delay." Other policies may simply require "prompt" or "immediate" notice or words to that effect. (See, e.g., *Downey Savings & Loan Assn. v. Ohio Casualty Ins. Co.* (1987) 189 Cal.App.3d 1072, 1089 [234 Cal.Rptr. 835] [notice required at

insurer *formally denies* the claim in writing." (*Prudential-LMI, supra*, 51 Cal.3d at p. 678, italics added.) This rule is justified on the ground that it would be "unconscionable" to permit the limitations period to run while the insured is pursing its rights in the claim process, as required by the policy. (*Id.* at p. 690; *Hydro-Mill Co., Inc. v. Hayward, Tilton & Rolapp Ins. Associates, Inc.* (2004) 115 Cal.App.4th 1145, 1163 [10 Cal.Rptr.3d 582].)

The tolling period ends, however, upon the insurer's *unconditional denial* of the insured's claim *in writing.* (*Prudential-LMI, supra*, 51 Cal.3d at p. 678; *Hydro-Mill Co., Inc. v. Hayward, Tilton & Rolapp Ins. Associates, Inc., supra*, 115 Cal.App.4th at p. 1163.) It does not matter that the insurer's *act* of denial does not specifically use that word. (*Migliore v. Mid-Century Ins. Co.* (2002) 97 Cal.App.4th 592, 605 [118 Cal.Rptr.2d 548] [the failure of the insurer to actually use the words "deny" or "denial" will not render the denial unequivocal, nor will the failure to mention the time limit for filing suit].) Once an insurer has unequivocally denied a claim, there is no justification for further tolling. Thus, the insured's request for reconsideration of the claim will not extend the time to sue. (*Singh v. Allstate Ins. Co.* (1998) 63 Cal.App.4th 135, 142 [73 Cal.Rptr.2d 546].)

Doheny Park claims that the running of the limitations period should be equitably tolled because Truck never sent it a *formal* written unequivocal letter of denial. This exalts form over substance. Truck specifically, and unequivocally, advised Doheny Park (in writing) that the amount of damage was less than its deductible. That obviously meant that there was, in Truck's view, nothing due under the policy. That, in practical effect, was a specific unequivocal denial sufficient to satisfy the test set out in *Prudential-LMI, supra*, 51 Cal.3d at page 678. In addition, Doheny Park appears to have conceded the point. First, it certainly treated Truck's action as a firm denial for eight years. Second, and more importantly, in its first amended complaint, it alleges that "[a]t no time between [Truck's] *denial* of the insurance claim

---

the earliest practicable moment after discovery of the loss].) An insured's failure to provide timely notice of a loss will constitute a breach of a condition of the policy, but it will not be viable defense to the insured's claim unless the insurer can demonstrate that it was "substantially prejudiced thereby." (*Ibid.*; *Campbell v. Allstate Ins. Co.* (1963) 60 Cal.2d 303, 306 [32 Cal.Rptr. 827, 384 P.2d 155] [even if notice first received after a judgment, an insurer must still show actual prejudice from the delay].) This is the so-called notice-prejudice rule. However, the longer the insured waits to notify the insurer, the shorter the tolling period: "For example, if an insured waits 11 months after discovering the loss to make his claim, he will have only 1 month [where the policy required suit within 12 months] to file his action after the claim is denied before it is time-barred[.]" (*Prudential-LMI, supra*, 51 Cal.3d at p. 692; see also *Prieto v. State Farm Fire & Casualty Co.* (1990) 225 Cal.App.3d 1188, 1196 [275 Cal.Rptr. 362].)

and January 2003 did plaintiff learn, or believe, that [Truck] had misled plaintiff. . . ." (Italics added.) We see no basis for application of any equitable tolling of the running of the limitations period in the Truck policy.

### 4. *Equitable Estoppel May Bar Insurer from Raising a Limitations Defense*

█ Equitable estoppel differs from equitable tolling in distinct and important ways. They each arise under different circumstances, and have different rationales and different predicates. (*Battuello v. Battuello* (1998) 64 Cal.App.4th 842, 847–848 [75 Cal.Rptr.2d 548].) Equitable estoppel does not "extend" a limitations period " 'but rather comes into play only after the limitations period has run and addresses itself to the circumstances in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period.' " (*Id.* at p. 847.) Unlike the doctrine of equitable tolling, which takes its life from the statute of limitations itself, the doctrine of equitable estoppel " 'takes its life . . . from the equitable principle that no man will be permitted to profit from his own wrongdoing in a court of justice.' " (*Id.* at pp. 847–848.)

The *Battuello* court was construing and applying section 366.2 (providing for a one-year limitation on a suit on causes of action which existed against a decedent at the time of death). That section specifically provided that the one-year period "shall not be tolled or extended for any reason except as provided [in the statute]." (§ 366.2, subd. (b).) *Battuello* held that this language precluded the application of any tolling of the limitations period, but did *not* bar the plaintiff from relying on the doctrine of equitable estoppel. (*Battuello v. Battuello, supra,* 64 Cal.App.4th at pp. 847–848.)

*Battuello*'s reasoning was cited with approval in *Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 383–384 [2 Cal.Rptr.3d 655, 73 P.3d 517] (*Lantzy*), where the Supreme Court reached a similar conclusion with respect to section 337.15 (the "absolute" 10-year limitations period applicable in latent construction defect cases). *Lantzy* noted that section 337.15 did not mention either equitable tolling or equitable estoppel, but nevertheless concluded that the application of the doctrine of equitable tolling to the statutory limitations period would "contravene the legislative purpose" (31 Cal.4th at p. 380) of providing repose to potential defendants after "the already lengthy period during which [they were] exposed to suit." (*Id.* at p. 382.) The court further held, however, that this same legislative purpose would *not* be contravened by allowing the plaintiffs to plead the doctrine of equitable estoppel in response to defendant's statute of limitations defense. (*Id.* at pp. 383–384.)

In California, an insurer may be estopped to assert a policy provision limiting the time to sue where it has caused the insured to delay filing suit until after the expiration of the time period. In *Vu*, an insurance adjuster inspected damage caused by the Northridge earthquake damage to the insured's home and told him *incorrectly* that the amount of damage was less than the 10 percent deductible provided for in the policy. Twenty months later, the insured discovered structural damage far exceeding the deductible and promptly submitted a claim which the insurer rejected as untimely. The Supreme Court, in answering a question certified to it by the Ninth Circuit Court of Appeals, held that the insurer may be estopped from asserting the time limitation as a defense if the insured had *reasonably relied* on the adjuster's representation as to the *amount* of damage. This is a factual issue and would depend on such questions as the insured's own knowledge and expertise regarding the amount of damage, the insured's diligence in ascertaining the extent of damage, whether the adjuster was qualified and, if not, whether the insured was aware of such lack of qualification, what the insured told the adjuster about the damage, what led the insured to suspect that the damage was greater than the deductible, and so forth. (*Vu, supra*, 26 Cal.4th at p. 1152.) " 'An estoppel may arise although there was no designed fraud on the part of the person sought to be estopped. . . . To create an equitable estoppel, "it is enough if the party has been induced to *refrain* from using such means or taking such action as lay in his power, by which he might have retrieved his position and saved himself from loss." . . . ". . . Where the delay in commencing action is induced by the conduct of the defendant it cannot be availed of by him as a defense." ' " (*Id.* at pp. 1152–1153.)

In another case, following initial repairs of earthquake damage, the insurer's adjuster told the insureds that all earthquake damage had been repaired. In reliance on that representation, the insureds allowed the one-year limitations period to expire without conducting any further investigation. It was held that the insurer was estopped from asserting the limitation as a bar to claims for later-discovered damage. (*Ward v. Allstate Ins. Co.* (C.D.Cal. 1997) 964 F.Supp. 307, 312 [applying California law]; cited with approval in *Vu, supra*, 26 Cal.4th at p. 1153.) As the *Ward* court stated, "[A]fter the Plaintiffs had submitted a timely claim to Allstate, they relied on the representations of Mr. Sanchez, a purported expert and agent of Allstate, that their damage was limited to approximately $20,000. For this reason, the Plaintiffs allowed the limitations period to elapse without conducting a further investigation. This is precisely the type of situation contemplated by the estoppel doctrine. Allstate cannot be allowed to lull the Plaintiffs into sleeping on their rights, and then use the limitations period as a sword to cut down their claims." (*Id.* at p. 312.)

■ There is one additional basis for application of the estoppel doctrine under California law. Insurers are required by the relevant regulations[11] issued by the Commissioner of Insurance to notify a claimant of any applicable time limits that might apply to the claim. Unless it can be shown that the claimant in fact had actual knowledge of it, the insurer may be estopped to assert any time limit as to which the required notification was not given. (See *Spray, Gould & Bowers v. Associated Internat. Ins. Co.* (1999) 71 Cal.App.4th 1260, 1269 [84 Cal.Rptr.2d 552]; *Neufeld v. Balboa Ins. Co.* (2000) 84 Cal.App.4th 759, 761–762 [101 Cal.Rptr.2d 151].)

5. *Section 340.9 Conditionally Revived Certain Northridge Earthquake Claims for a One-year Period but Such Statutory Revivor Does Not Preclude Application of the Doctrine of Equitable Estoppel*

■ In 2000, the Legislature enacted section 340.9 (see fn. 6, *ante*) in response to "compelling reports of rampant mishandling of [Northridge Earthquake] insurance claims by insurers, and the unavailability of relief from the former administration of the Department of Insurance[.]" (*20th Century Ins. Co. v. Superior Court* (2001) 90 Cal.App.4th 1247, 1267 [109 Cal.Rptr.2d 611] (*20th Century*).)[12] Section 340.9 revived, for a one-year

---

[11] "Every insurer shall disclose to a first party claimant or beneficiary, all benefits, coverage, *time limits* or other provisions of *any insurance policy* issued by that insurer that may apply to the claim presented by the claimant." (Cal. Code of Regs., tit. 10, § 2695.4, subd. (a), italics added.) In this case, we do not reach or address the impact of this regulation for two reasons. First, the parties do not raise or argue the point. Second, in view of our conclusion and disposition on this matter, there is no reason to do so. It may, however, be a matter the trial court can consider upon remand.

[12] The legislative history of section 340.9 reflects the following matters:

"Proponents contend that there are strong public policy reasons to protect [quake victims] under the circumstances of this bill. [They state] that thousands of people who suffered damage to their homes did not receive the benefit of their insurance contracts because of the insurance companies' conduct. [They further] assert that ample evidence exists to show that insurers handling Northridge earthquake claims engaged in a systematic program of misleading consumers about the nature and extent of damage to their homes. Later, when it became clear that the problems were indeed significant, proponents assert that the insurers simply refused to pay claims on the basis that the claims had become time-barred." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1899 (1999–2000 Reg. Sess.) as amended May 23, 2000, p. 5.) In addition, "[t]o compound problems, proponents note that when homeowners complained to the Department of Insurance to obtain relief, the department afforded no help. Thus, based on the circumstances surrounding the Northridge earthquake, proponents argue that there are sufficient public policy reasons to extend the statute of limitations and allow the homeowners to seek justice on their insurance claims." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 1899 (1999–2000 Reg. Sess.) as amended May 23, 2000, p. 4.)

Of more relevance, in light of the allegations in Doheny Park's first amended complaint, is the following from a report by the Senate Committee on the Judiciary: " 'News accounts have asserted that many of the quake victims have yet to receive full and fair compensation from their insurance companies to cover the costs incurred as a result of the quake. Many

period (ending December 31, 2001) " 'any insurance claim for damages arising out of the Northridge earthquake of 1994 which is barred as of the effective date of this section [i.e. January 1, 2001] *solely* because the applicable statute of limitations has or had expired . . . .' "[13] (*20th Century, supra,* at p. 1253, fn. 2, italics added.) Put simply, section 340.9 "reopen[ed] the filing window, for a one-year period, to those *otherwise viable* cases that had become time barred." (*Rosenblum v. Safeco Ins. Co.* (2005) 126 Cal.App.4th 847, 858 [24 Cal.Rptr.3d 427].)

There is no dispute that Doheny Park was a claimant who had contacted an insurer regarding its claim prior to January 1, 2000 and its claim was barred by the expiration of the two-year limitation period in Truck's policy. Thus, Doheny Park was a claimant entitled to the benefit of the revivor provisions of section 340.9.

Truck does not argue otherwise, but urges that since Doheny Park admittedly did not file this action until April 2003, section 340.9 is of no assistance to it. We agree. But Truck goes further and contends that section 340.9 also operates to preclude, as a matter of law, Doheny Park's reliance upon the doctrine of equitable estoppel. Essentially, Truck's argument is that section 340.9 supplemented or superseded the application of equitable estoppel to the Northridge earthquake claims. In Truck's view, section 340.9 amounts to an

---

victims . . . have received only partial settlements for their earthquake claims, and others have received no compensation at all, having been improperly told that the damage they suffered was below policy deductibles. In subsequent years, families have discovered damage that either was ignored or missed by the original claims adjuster, yet some insurers, according to . . . news accounts, have stonewalled claims, leaving homes, condominiums and apartment building in shambles and homeowners without any recourse.' (Sen. Com. on Judiciary, 3d reading analysis of Sen. Bill No. 1899 (1999–2000 Reg. Sess.) as amended July 6, 2000, p. 2.) According to the statute's author, section 340.9 was intended to 'provide these individuals who . . . were victimized twice, (once by the earthquake and a second time by their insurance companies) with a reasonable "second chance" to seek redress for their damages.' (*Id.* at p. 3.)" These accounts also caused the author to comment that " 'the one-year statute of limitations that is current law under Insurance Code section 2071 has barred victims from being fairly compensated for their losses . . . [because they] were misled about the extent of damage done as a result of the earthquake.' (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1899 (1999–2000 Reg. Sess.) as amended May 9, 2000, p. 3.)"

[13] In *20th Century,* we commented on the Legislature's use of the term " 'statute of limitations.' " "[I]t seems clear to us that the Legislature intended the phrase 'applicable statute of limitations' to embrace the mandated contractual period. Indeed, that is the only limitations period applicable to the claims asserted by policyholders to which the statute is addressed. Since the obvious legislative purpose behind the enactment of section 340.9 was to bring relief to policyholders with claims under policies, *all of which contain the contractual limitations provision,* it would be absurd for us to adopt 20th Century's [contrary] construction of this phrase." (*20th Century, supra,* 90 Cal.App.4th at p. 1275, italics in original.)

adequate legal remedy that is reflected in a comprehensive statutory scheme. (See *Pacific Scene, Inc. v. Penasquitos, Inc.* (1988) 46 Cal.3d 407, 414 [250 Cal.Rptr. 651, 758 P.2d 1182] [" 'equitable relief . . . cannot be intruded in matters that are plain[ly] and fully covered by positive statute' "].) Even though neither section 340.9, nor its legislative history, mentions the doctrine of equitable estoppel, it is Truck's view that by its enactment of section 340.9, the Legislature intended to bar the assertion of equitable estoppel. Section 340.9 was, according to Truck, intended to be the one final and complete remedy for all unpaid or underpaid Northridge earthquake claims and, once the one-year revival period had passed, all such claims were forever foreclosed. With this part of Truck's argument, we disagree.

This issue was directly reached by our colleagues in Division 7 of this District in *Cordova v. 21st Century Ins. Co.* (2005) 129 Cal.App.4th 89 [28 Cal.Rptr.3d 170] (*Cordova*).[14] The *Cordova* court addressed and expressly rejected the contention that the Legislature had any intent at all, in enacting section 340.9, to bar an insured's reliance upon the doctrine of equitable estoppel. The court noted, with emphasis, that there is not one word mentioned with respect to that doctrine in either the statute or its legislative history. (129 Cal.App.4th at p. 106.)

As the *Cordova* court put it, "[c]learly the Legislature intended to put a one-year lid on the statutory revival of time-barred claims but neither we nor 21st Century have found one sentence in the legislative history suggesting this one-year lid was intended to exclude equitable remedies for those who for some legitimate reason could not bring their claims within this one-year period. [¶] Indeed it is the Legislature's 'expressive silence' which most convinces us it did not intend section 340.9 to supplant the doctrine of

---

[14] The facts in *Cordova* were substantially identical to those present in this case. Following the Northridge earthquake, Cordova submitted a claim to 21st Century, her property insurer. After determining that the damage to her home was less than the deductible, 21st Century paid her some small sums under her "other structures" coverage. In November of 1994, Cordova wrote to 21st Century with respect to the possibility of an inspection of her property by a structural engineer. 21st Century responded, advising her that if her contractor suggested such an inspection, it would employ an engineer to conduct the inspection. She did nothing after that until August 2002 when her attorney requested that 21st Century contact him regarding her claim. 21st Century wrote back pointing out that the period for filing a claim had long since expired. Cordova's attorney then requested that the claim be reopened under authority of the *Vu* decision. There were no further communications and, in September 2002, Cordova filed suit. She alleged 21st Century unreasonably and unjustifiably failed to conduct a thorough investigation of her earthquake loss and she was misinformed as to the extent of the damage to her property. She further alleged that the special statutory one-year period for filing suit against 21st Century for losses sustained in the Northridge earthquake had expired before she realized the true extent of her damage. (*Cordova, supra*, 129 Cal.App.4th at pp. 93–94.)

equitable estoppel with respect to claims for damages arising from the Northridge quake." (*Cordova, supra,* 129 Cal.App.4th at p. 106, fn. omitted.)

The *Cordova* court emphasized that the Legislature may or may not have been aware of the then pending *Vu* litigation,[15] but most certainly it was aware of the doctrine of equitable estoppel. "If by enacting section 340.9 the Legislature intended to take away a remedy which has existed for hundreds of years one would expect to see discussion of such a step in the legislative history. But there is not a word in the legislative record about the doctrine of equitable estoppel. . . . It is not our role to speak for the Legislature when the Legislature has kept silent. [¶] Our conclusion section 340.9 does not replace the doctrine of equitable estoppel is further supported by other extrinsic aids to statutory interpretation including ' ". . . the ostensible objects to be achieved, the evils to be remedied, . . . public policy, . . . and the statutory scheme of which the statute is a part." [Citation.] [Fn. omitted.]' [¶] In enacting section 340.9 the Legislature's object was 'to alleviate a broad and significant problem caused by the insurers' conduct; to help thousands of policyholders who were misled by the insurers into waiving their right to make claims in a timely manner.' [Fn. omitted.] The evil to be remedied was the insurance companies' 'rampant mishandling' of Northridge claims, their ' "systematic program of misleading" ' their policyholders, and their ' "re-fus[al] to pay claims on the basis that the claims had become time-barred." ' [Fn. omitted.] The public policy reflected in the legislation was to enforce the insurance companies' fiduciary duties to their policyholders [fn. omitted] and 'to advance the public interest in protecting insureds mistreated by their insurers at a time when the insureds were most vulnerable.' [Fn. omitted.] The statutory scheme of which section 340.9 is a part is the regulation of insurance policies including the time for bringing suit under the policy as set forth in Insurance Code section 2071. We have found no extrinsic evidence suggesting section 340.9 was intended to bar any new claims for earthquake damage after December 31, 2001.

"Finally, we are not won over by 21st Century's argument that after the passage of a reasonable length of time (legislatively determined in section 340.9 to be eight years) insurers should be free from the burden of disruptive and protracted liability and able to plan their affairs with a degree of certainty; it is unreasonable to expose insurers to liability on claims made 10, 20 or 30 years after the Northridge quake. [¶] This argument was impliedly rejected in *Lantzy v. Centex Homes* [*supra,* 31 Cal.4th at p. 384] in which the court held the doctrine of equitable estoppel permits a plaintiff to bring an action for construction defects after the expiration of the 'absolute' 10-year statute of limitations on such claims. [Fn. omitted.]

---

[15] The Supreme Court filed its decision in *Vu* on November 5, 2001, over 10 months after section 340.9 became effective.

"... [T]he burden of a late claim falls more heavily on the insured than the insurer. The insured first has to overcome the statute of limitations by producing evidence which would equitably estop the insurer from asserting the limitations period. This means proving the insurer was apprised of the facts; it intended its conduct be relied upon by the insured; the insured was ignorant of the true facts; and the insured reasonably relied on the insurer's conduct to her injury. [Fn. omitted.] If the insured clears this hurdle she must also be able to prove the damage she is claiming was caused by the 1994 quake and not some other event. For these reasons we reject 21st Century's contention applying the doctrine of equitable estoppel to the remaining Northridge earthquake cases will expose insurers to unknown but significant liability. [¶] But as to those insureds who can establish the requisite grounds for estoppel, fairness and equity require the risk of loss be shifted from the innocent policyholder to the insurance company whose wrongful conduct induced the policyholder to postpone bringing suit. Otherwise the courts wind up rewarding the insurer's wrongdoing. Even more disturbing, the biggest rewards would go to the insurance companies which best hid the truth from their insureds. [¶] Accordingly[,] we hold section 340.9 does not prevent Cordova from contending 21st Century is estopped from defending her action on the ground the statute of limitations in Insurance Code section 2071 has expired." (*Cordova, supra*, 129 Cal.App.4th at pp. 106–108.)

For all of the reasons articulated in *Cordova*, we disagree with Truck's fundamental premise, that section 340.9 constituted or was intended to be, a comprehensive statutory scheme enacted to finally conclude all unresolved Northridge earthquake claims. By its own terms and, as its legislative history confirms, it had a much narrower purpose. As we said in *Rosenblum v. Safeco Ins. Co., supra,* 126 Cal.App.4th 847, section 340.9 simply "reopen[ed] the filing window, for a one-year period, to those otherwise viable cases that had become time barred." (126 Cal.App.4th at p. 858, italics omitted.) We agree with the *Cordova* court's conclusion that the Legislature did not intend, by the enactment of section 340.9, to in any way affect a potential assertion of an equitable estoppel argument under *Vu.*

We, therefore, reject Truck's argument that the passage of section 340.9 and Doheny Park's failure to file its action by December 31, 2001 is fatal, *as a matter of law*, to its contention as to the application of the doctrine of equitable estoppel. This leaves us with the issue upon which this appeal turns. Has Doheny Park alleged, in its first amended complaint, sufficient facts to justify application of that doctrine? We now turn to a more detailed examination of the allegations of that pleading in order to answer this pivotal question.

### 6. The Allegations of the First Amended Complaint State Sufficient Facts to Warrant Application of the Doctrine of Equitable Estoppel

As already indicated, this case reaches us upon demurrer. We must therefore accept as true all well pled factual allegations, although not those that are conclusionary or argumentative (*Moore v. Regents of University of California, supra,* 51 Cal.3d at p. 125). We focus on those allegations of Doheny Park's first amended complaint upon which it bases its claim for application of equitable estoppel.

In the "Claims of Plaintiff" portion of its complaint (which was incorporated by reference in each of the relevant separate causes of action), Doheny Park alleged that its property did suffer some damage from the January 17, 1994 earthquake and then alleged as follows:[16]

". . . [Doheny Park] was run by a volunteer board of directors that did not believe that the cost to repair the covered earthquake damage exceeded the policy deductible. [It] made a claim and entrusted [Truck] with the building inspection in compliance with its policy of insurance and in furtherance of [its] duty to [Doheny Park]. Though [Doheny Park] did not believe at the time the claim was reported that the cost to repair the damage would exceed the policy deductible, . . . [it] believed that [it had been] diligent and that reporting a possible claim to [Truck], whom [it] trusted to inspect [its property], was in furtherance of that diligence.

". . . In 1994 [Truck's] representative inspected [Doheny Park's] property and evaluated the earthquake damage. [Truck] represented that it was an expert in the adjustment of property loss and valuation of property damages. [It] informed [Doheny Park] in writing that [it] determined that the cost to repair the covered earthquake caused damages at [the] condominium complex was $36,489.02. This repair estimate was a misrepresentation, though [Doheny Park] at the time had no reason to believe that [Truck] was misrepresenting the cost of repair. [¶] . . . [¶]

". . . [Truck's] representation that [the] earthquake damages were $36,489.02 and below the policy limits deductible was, in fact, false. [Truck] intentionally misled [Doheny Park] by making this representation. [Truck] also failed to fully and properly inspect [the] property but led [Doheny Park] to believe that the property was properly and fully inspected. In fact, the earthquake damage to [Doheny Park's] buildings exceeded the policy deductible and may exceed the policy limits for the coverage to buildings. [¶] . . . [¶]

---

[16] We quote extensively the relevant allegations. We have modified with brackets the quoted language in immaterial ways for reasons of simplicity and clarity.

"[Doheny Park] reasonably relied on [Truck's] representation that the earthquake damage to [the] property was below the deductible. [Truck's] representation that the cost to repair the earthquake damage was $36,489.02, was consistent with [Doheny Park's] uneducated estimate of the cost to repair the earthquake damage. It takes a trained expert to determine the cost to repair earthquake damage. No one on the board of directors had training to assess property damage and no one on the board knew or had reason to believe that [Truck's] analysis of the cost to repair the earthquake damage was wrong. [Doheny Park] knew of no facts which were inconsistent with the repair estimate of $36,489.02. The damage that [Doheny Park] witnessed at its building, some cracks around windows, appeared to the uneducated eye to be superficial and insubstantial.[17] Not being experts in the adjustment of property losses, and not having an independent expert opinion, [Doheny Park] trusted [Truck's] representation of the cost to repair. Had [it] known that [Truck] had a practice of underestimating the cost to repair earthquake damaged buildings in an effort to preclude claims payments, [Doheny Park] would not have relied on [Truck's] estimate. By reporting the existence of what [it] believed to be minor earthquake damage, and by having [Truck] inspect and estimate the repair cost of the earthquake damage, [Doheny Park] was diligent in using the means at its command to ascertain the truth. Unfortunately . . . , [Truck was] not truthful. [Doheny Park], a non-profit organization run by volunteers, did not hire experts to verify [Truck's] factual assertions because [it] had no reason to believe that [Truck was] misrepresenting any facts. Had [Doheny Park] known that [Truck] could not be trusted, that [Truck] looked out for its own interests above the interests of its policyholders, and that [it] had a pattern and practice of misrepresenting the amount of earthquake damage to insureds, then [Doheny Park] would not have relied on [Truck's] representation as to the cost to repair [the] condominium complex. In reliance on [Truck's] representation, [Doheny Park] did not hire professionals to inspect the property to determine the true cost to repair the earthquake caused damage. At no time between [Truck's] denial of the insurance claim and January 2003 did [Doheny Park] learn, or believe, that [Truck] had misled [Doheny Park] about the extent of earthquake damage and the cost to repair [such] damage. [Doheny Park] was not aware at any time that earthquake damage could be hidden in the walls and that such damage was ignored by [Truck] or that [Truck] knew of the existence of the hidden damage but failed to inform [Doheny Park] of its existence. While [Doheny Park] did learn of the passage of . . . section 340.9 prior to December 2001, [it] had no reason to believe that [Truck] had misrepresented any facts . . . . [Doheny Park] believed, at the time, that [it] could depend

---

[17] On this point, see *Abari v. State Farm Fire & Casualty Co.* (1988) 205 Cal.App.3d 530, 535 [252 Cal.Rptr. 565].

on [Truck]. [It] did not know that as of December 2001 [Truck] has paid over a hundred million dollars in settling commercial earthquake bad faith lawsuits arising from [Truck's] misrepresentations to policyholders that had earthquake damage. [Doheny Park] remained ignorant of the falsity of [Truck's] representation until February 2003, when [it] learned from a professional that the earthquake caused damage to the property exceeded the policy deductible."

The foregoing allegations, which are no less specific than those found to be sufficient in *Battuello v. Battuello, supra,* 64 Cal.App.4th at page 848, are what Doheny Park relies on in claiming that it has sufficiently pled a basis for the application of equitable estoppel. Truck argues that the allegations are not sufficiently specific. They do not, Truck asserts, show why Doheny Park waited until February 2003 before it hired a professional to inspect its property. Such delay demonstrates, in Truck's view, that Doheny Park's claims of ignorance and reliance on Truck's alleged misrepresentations were neither justifiable nor reasonable.

■ The problem with Truck's argument is that we are reviewing a demurrer, not a summary judgment. We must accept as true Doheny Park's factual allegations. We do not agree that they are mere conclusions. Doheny Park was only required to plead ultimate facts and it has done so. Whether it can produce at trial, or in response to a motion for summary judgment, evidence that will in fact support all or any of those allegations, including a legally justifiable defense of its delay, is another matter. (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1391 [272 Cal.Rptr. 387].) The critical question raised by Truck's demurrer is whether Doheny Park's allegations demonstrate a reasonable basis for its eight-year delay in filing suit. The issue of the "insured's diligence" is, under the principles articulated by the Supreme Court (*Vu, supra,* 26 Cal.4th at p. 1152), a *factual* question. Such diligence (or its absence) is one of the factual questions that will determine whether there was *reasonable reliance* by Doheny Park on Truck's alleged representations. However Doheny Park's alleged claims might test the limits of our credulity if we were sitting as a trier of fact, we cannot say that its alleged explanation for the eight-year delay, *as a matter of law*, precludes a finding of reasonable reliance.

■ Settled principles of law support our conclusion. "In order to plead a cause of action, the complaint must contain a 'statement of the facts constituting the cause of action, in ordinary and concise language.' (Code. Civ. Proc., § 425.10, subd. (a).) While it is true that pleading conclusions of

law does not fulfill this requirement, it has long been recognized that '[t]he distinction between conclusions of law and ultimate facts is not at all clear and involves at most a matter of degree. [Citations.] For example, the courts have permitted allegations which obviously included conclusions of law and have termed them "ultimate facts" or "conclusions of fact." ' [Citations.] *What is important is that the complaint as a whole contain sufficient facts to apprise the defendant of the basis upon which the plaintiff is seeking relief.* [Citations.]" (*Perkins v. Superior Court, supra,* 117 Cal.App.3d at p. 6, italics added.) It has been consistently held that " 'a plaintiff is required only to set forth the essential facts of his case with reasonable precision and with particularity sufficient to acquaint a defendant with the nature, source and extent of his cause of action. [Citation.] If there is any reasonable possibility that the plaintiff can state a good cause of action, it is error to sustain a demurrer without leave to amend. [Citations.]' . . . 'The particularity required in pleading facts depends on the extent to which the defendant in fairness needs detailed information that can be conveniently provided by the plaintiff; less particularity is required where the defendant may be assumed to have knowledge of the facts equal to that possessed by the plaintiff. [Citation.]' . . . There is no need to require specificity in the pleadings because 'modern discovery procedures necessarily affect the amount of detail that should be required in a pleading.' [Citation.]" (*Ludgate Ins. Co. v. Lockheed Martin Corp.* (2000) 82 Cal.App.4th 592, 608 [98 Cal.Rptr.2d 277].) This fair notice test is clearly satisfied here.

■ In *Spray, Gould & Bowers v. Associated Internat. Ins. Co., supra,* 71 Cal.App.4th 1260 [84 Cal.Rptr.2d 552], we recited the four factors generally required in order to establish a basis for equitable estoppel: " ' "(1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and, (4) he must rely upon the conduct to his injury." ' " (*Id.* at p. 1268.) The allegations we have quoted above at length, *when read as a whole,* plead ultimate facts supporting each of these elements. Doheny Park has sufficiently " 'set forth the circumstances from which the estoppel arises.' " (See *In re Marriage of Hanley* (1988) 199 Cal.App.3d 1109, 1121 [245 Cal.Rptr. 441].) No more is required.

We conclude that while both the original and revived limitations periods have expired, Doheny Park has alleged sufficient facts for application of the doctrine of equitable estoppel. Whatever difficulty it may or may not have in proving such allegations at trial, it is enough to survive Truck's demurrer. We will therefore remand the matter for further proceedings on this issue.

## *DISPOSITION*

The order of dismissal is reversed and the matter is remanded for further proceedings not inconsistent with the views expressed herein. Doheny Park shall recover its costs on appeal.

Klein, P. J., and Kitching, J., concurred.