Filed 1/9/20 Certified for Publication 1/22/20 (order attached)

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| DOUGLAS J. ROGER, | |
| Plaintiff and Appellant, | E070776 |
| v. | (Super.Ct.No. PSC1501512) |
| COUNTY OF RIVERSIDE et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County. James T. Latting, Judge. Reversed.

Slovak Baron Empey Murphy & Pinkney, Shaun M. Murphy, and Wendy S. Dowse for Plaintiff and Appellant.

Diesenhouse Law and Bruce E. Disenhouse for Defendants and Respondents.

1

Douglas Roger, an orthopedic surgeon, sued Riverside County (the County) and its sheriff's department (collectively, respondents) after they falsely reported he had been charged with a felony. In an earlier civil action, the Riverside Superior Court had held Roger in civil contempt (Code Civ. Proc. § 1209, subd. (a)(5)) for refusing to produce his patients' medical records in discovery, and remanded him to jail, where he spent 52 days in custody. When the sheriff's department booked him into custody, they incorrectly entered his civil violation in their electronic database as a felony charge, and then reported that inaccurate charge to the California Department of Justice (DOJ), creating a false criminal record for Roger. The complaint he subsequently filed against respondents asserted five causes of action—defamation, defamation per se, writ of mandate, declaratory relief, and violation of his federal civil rights (42 U.S.C. § 1983) (the "section 1983 claim"). Among other things, he alleges he lost a lucrative hospital contract he had maintained for the previous 12 years as a result of the respondents' error.

The trial court sustained respondents' demurrer to the section 1983 claim and later disposed of the remaining causes of action at the summary judgment stage. The court concluded Roger had failed to state a section 1983 claim as a matter of law because he had not alleged facts "establishing the nature of [respondents'] training program" and therefore failed to allege the training was so obviously inadequate as to amount to deliberate indifference to inmates' civil rights. The court dismissed the defamation claims because the undisputed evidence showed Roger had failed to comply with the

2

claim presentation requirements in the Government Claims Act (Gov. Code,[1] § 810 et seq.) by filing a late claim for damages with the County. The court concluded the writ claim failed because the undisputed evidence showed respondents had fixed the error in Roger's record during the litigation, and therefore their recordkeeping errors amounted to a past wrong, not a present controversy. Finally, the court concluded there was no legal basis for declaratory relief because respondents were under no ministerial duty to act— that is, to maintain correct records.

On appeal, Roger challenges the court's dismissal of each of his claims. For the reasons explained below, we find his arguments meritorious and will therefore reverse the judgment.

# I

# BACKGROUND

A. *The Underlying Facts*

In 2013, Roger was a defendant in a civil action regarding the collection of a commercial note (*Revere Financial Corporation v. Roger et al.*, case No. INC092308). The court-appointed receiver in that case sought production of Roger's business records, including the medical records of his current and past patients. Citing HIPAA (the Health Insurance Portability and Accountability Act) and other privacy laws, Roger refused to produce the medical records. On October 16, 2013, the trial court issued an order compelling Roger to produce the medical records, held him in contempt for failing to

---

[1] Unlabeled statutory citations refer to the Government Code.

3

comply with the order, and remanded him to jail. (Code Civ. Proc., § 1209, subd. (a)(5).) That same day, Roger presented himself to the sheriff's deputies who were waiting to escort him to jail.

Respondents use an electronic booking database called Jail Information Management System (JIMS) and forward booking entries to the DOJ. Unknown to Roger, when he was booked, respondents entered his charge into JIMS as a felony (even though contempt of court under Code of Civil Procedure section 1209 is a civil violation) and reported the felony charge to the DOJ.

Roger was released from jail on December 6, 2013, at which point he discovered a letter sent to him from the medical staff president at a hospital where he worked. The letter said the hospital's executive committee had learned, based on information "gleaned from the Riverside Superior Court and Riverside Jail websites," that he had recently been "arrested and incarcerated on a felony charge for contempt of court." The letter informed Roger that he had failed to satisfy his obligation to notify them of any felony arrest or conviction. In a declaration submitted during this lawsuit, Roger said his attorney had assured him "there was nothing criminal about civil contempt," and as a result, he assumed the letter was "merely repeating a rumor" sparked by "a practicing surgeon being taken off to jail in surgical attire." He said he "had no knowledge of a jail website" and could not imagine "that a civil collection case could be used by a law enforcement agency to create a criminal history and publicly label me as an accused felon."

4

In April 2014, Roger's girlfriend (who had also been held in civil contempt in the prior lawsuit) called the jail to ask if they could remove the felony designations in her and Roger's booking entries. According to the girlfriend, the employee she spoke with said the designation would "disappear shortly" because they were no longer in custody. In May 2014, Desert Oasis Healthcare, a group health care practice, terminated its contract with Roger.

On September 10, 2014, Roger filed a claim for damages with the County, using its "Claim for Damages to Person or Property" form. Regarding timing, the form asks, "When did damage or injury occur?" and Roger wrote "May 1, 2014 and ongoing." In response to the question, "Why do you claim the County is responsible?" Roger wrote, "I was detained by the Riverside County Jail on a <u>civil</u> matter. The Riverside County Jail subsequently posted on its public website that I had been incarcerated on felony criminal charges. This false and defamatory statement has caused significant damage to my professional reputation as a physician and an orthopedic surgeon. It has resulted in loss of professional services contracts, loss of patient referrals, and significant loss of income." In response to the prompt "List damages incurred to date," Roger wrote that he had lost his contract with Desert Oasis Healthcare on May 1, 2014 as a result of the false statement. He said he had earned about $1 million per year for the previous 12 years under that contract, and had expected to retain it for another 15 years. Roger attached the following documents to his claim—(1) a printout from JIMS reflecting he had been booked on October 16, 2013 for felony contempt of court; (2) the letter from Eisenhower

5

Medical Center regarding his arrest; (3) a letter from Desert Oasis Healthcare dated August 18, 2014, referencing the fact their contract with Roger had terminated on May 1, 2014; and (4) copies of paychecks from Desert Oasis Healthcare for the first four months of 2014.

On October 1, 2014, the County sent Roger a letter informing him in summary fashion that it had rejected his claim.

Around that time, Roger learned respondents had notified the DOJ of the inaccurate felony charge and that he had a criminal record as a result. Roger was in law school then, and his professor, Sue Steding, a former Chief Assistant District Attorney in Riverside County, agreed to look into his predicament. She spoke with an undersheriff, and on October 31, 2014, he left her a voicemail saying Roger's booking entry in JIMS had been changed to reflect he had been charged with a misdemeanor instead of a felony (which was also incorrect because his violation of the court's order was not criminal). This revised booking information was also transmitted to the DOJ.

The following month, in preparation for his moral character application for the California Bar, Roger applied for a background check and learned he still had a criminal record, except now the inaccurate charge was listed as a misdemeanor instead of a felony. In response, he submitted two unsuccessful requests to the DOJ to expunge the criminal charge from his record.

6

B.    *Roger's Lawsuit*

Roger filed this lawsuit on April 1, 2015.  In his second amended complaint, he alleged causes of action for defamation, defamation per se, writ of mandamus, declaratory relief, and violation of his civil rights (42 U.S.C. § 1983).  In addition to damages for defamation, he sought a writ of mandate prohibiting respondents from designating civil contempt (violations of Code Civ. Proc., § 1209, subd. (a)(5)) as criminal charges and directing them to designate such charges in a manner that reflects their civil nature.  He also sought a declaration from the court that respondents had falsely reported he had been charged with a felony, and later falsely reported he had been charged with a misdemeanor.

1.    *Rulings on demurrer*

Respondents filed a demurrer to each claim in Roger's complaint.  As relevant here, they argued the defamation claims failed as a matter of law because they were immune from tort liability for their booking actions under section 821.6, which immunizes public employees from liability for injuries caused by their instituting or prosecuting a judicial proceeding in the scope of their employment.  They also argued the section 1983 claim failed as a matter of law because Roger had not specifically alleged how they trained their employees on booking procedures and therefore had not alleged their training showed a deliberate indifference to inmates' civil rights.

The court overruled the demurrer to the defamation claims, concluding section 821.6's immunity "is limited to actions taken by law enforcement personnel in the course

7

of or as a consequence of an investigation" and did not apply to booking because it was not part of the investigatory process. The court sustained the demurrer to the section 1983 claim with leave to amend, concluding Roger had not "set forth facts establishing the nature of [respondents'] training program and that it was so obviously inadequate as to demonstrate that [respondents'] policymakers made a conscious choice to disregard citizens' constitutional rights."

Roger then amended his complaint to add the following allegations:

"[Respondents'] training program with regard to Plaintiff and to other persons placed in custody on civil contempt charges was so inadequate as to amount to deliberate indifference to the constitutional rights of such persons.

"The inadequacy and/or complete absence of training regarding how to handle the entry of civil contempt on a Jail or other County record, which [respondents] knew was likely to result in the type of harm suffered in fact by Plaintiff, and the decision to enter the obviously false and defamatory accusation regarding Plaintiff into the JIMS, shows a conscious choice on the part of [respondents] to disregard the constitutional rights of Plaintiff and other similarly situated citizens.

"[Respondents'] subsequent refusal to correct the records pertaining to Plaintiff further demonstrate their deliberate disregard for Plaintiff's rights. Plaintiff is further informed and believes that [respondents'] refusal to correct the records and refusal to implement training and procedures to avoid causing harm to others similarly situated as

8

Plaintiff represents city and county policy in this regard and that such subsequent inaction constitutes a deliberate and intentional ratification and approval of such conduct."

Respondents demurred to the section 1983 claim as amended, and this time the court sustained the demurrer without leave to amend. Relying on *City of Canton v. Harris* (1989) 489 U.S. 378 (*Harris*), the court concluded Roger had failed to add any relevant factual allegations regarding respondents' alleged "failure to train."

The court also sustained the demurrer to the defamation claims, concluding section 821.6 prosecutorial immunity *did* apply to respondents' actions, because booking "arises out of the process of instituting or prosecuting a judicial proceeding." However, the court later reconsidered this ruling, concluded the immunity did not apply, and overruled the demurrer to the defamation claims.

### 2. *Written discovery*

In response to Roger's discovery requests, respondents admitted they owed him a duty to accurately report information about his violation in JIMS, as well as a duty to accurately report his information to the DOJ. Respondents also said they have "no policy or procedure for booking inmates under civil contempt," instead, they designate the violation as either a felony or a misdemeanor.

### 3. *Summary judgment rulings*

With the section 1983 claim dismissed, respondents moved for summary judgment of the remaining causes of action—defamation, defamation per se, writ of mandate, and declaratory relief. They argued: (1) Roger failed to file a timely claim for damages, a

9

prerequisite to filing his lawsuit (§ 945.4); (2) the trial court's second of three rulings on prosecutorial immunity was correct and thus the defamation claims fail as a matter of law; and (3) the writ and declaratory relief claims were moot because they had since corrected Roger's record to reflect a charge for *civil* contempt of court.

To support the argument that Roger failed to file a timely claim for damages, the County submitted the declaration of Debra Christian, its Senior Claims Adjuster, who reviewed and rejected Roger's claim. Christian said the County's policy is to rely on the claimant's response to the form's question, "When did the damage or injury occur?" to determine whether the claim is timely; they do not make their own "independent determination." She said that because the County received the claim within six months of the date of injury that Roger had written in the form (May 1, 2014), "the claim was not deemed late at that time, and no notice of late claim was required or was sent." Christian said she now understands (as a result of the litigation) that Roger's defamation claims *accrued* on October 16, 2013, when he was booked into custody "and the charges against him were published into JIMS and to the California Department of Justice." She said "*[i]f that information had been provided by [Roger] in his . . . Claim,*" the County would have known his claim was untimely and deemed it so. (Italics added.)

To support their argument the writ and declaratory relief claims were moot, respondents submitted the declarations of two sheriff's department employees. John McClanahan is a Systems Administrator III with the sheriff's department's Technical Services Bureau, and is responsible for overseeing the JIMS hardware and operating

10

system. In his declaration, he said he was "the person who was instructed to, and made the appropriate changes to the JIMS system for booking 201347240, for Doug Jay Roger." He said on February 25, 2016, the DOJ "requested a clarification of JIMS to reflect that the contempt order regarding [Roger] pursuant to CCP 1209(A)(5) was neither a felony, misdemeanor, nor an infraction." In response, he updated Roger's electronic JIMS entry "to 'N' which stands for No Charge and Civil Penal Code ('CPC')." He concluded his declaration by saying that, based on his review, "all of the relevant records within the JIMS system have been corrected on this booking related to Dr. Roger to reflect a charge of CCP § 1209(A)5 with no severity."

Christa Dreier, a Supervising Fingerprint Examiner at the sheriff's department, submitted a declaration saying she had been the one to communicate with the DOJ to correct Roger's criminal record. She said she had contacted the DOJ in February 2016 about the issue and they asked her to send them a change request. She said she faxed a request on March 10, 2016 and then again on March 24, 2016. On March 29, 2016, nearly three years after the false felony charge had been reported to the DOJ, Dreier received a call from the DOJ informing her that Roger's record now reflected a civil violation only. She concluded her declaration saying that based on her review, "all of the relevant records with the DOJ have been corrected on this booking related to Dr. Roger to reflect a charge of CCP § 1209(A)5 with no severity."

Roger opposed the summary judgment motion. He argued the County had waived its late-claim defense by failing to notify him of the defect and allowing him to seek leave

11

to file a late claim, as required by section 911.3.  He also pointed out that he *did* provide the County with the date of the incident giving rise to his damages, as the first document he attached to his claim form was the JIMS booking entry bearing an arrest and booking date of October 16, 2013.  Roger argued the prosecutorial immunity defense failed because the act of booking an inmate for civil contempt is neither investigatory or prosecutorial.  Finally, he argued his writ and declaratory relief claims were not moot, and even if they were, (i) respondents' lack of a procedure for booking inmates on charges of civil contempt is an issue of significant public interest and (ii) the error that happened in his case is likely to happen to similarly situated inmates in the future.

During oral argument on the motion, Roger's counsel argued that the County's form failed to comply with section 901 because instead of asking claimants when their claim *accrued*, it asks when their *damages occurred*, which, depending on the tort, is not necessarily the same date.  "That's asking a layperson, 'When did you suffer injury?' And according to the layperson who submitted this form, he suffered injury when he lost his [hospital] contract."  Counsel added, "The County can't come up with some form that doesn't even clearly articulate what it is that it's looking for.  If [it's] looking for accrual, then [the form] should say 'accrual.'  But the [Government Code] doesn't say you get to put some ambiguous language in your form to confuse claimants so that they don't understand that it's supposed to be [date of accrual]."

The trial court granted the motion with regard to the two defamation claims on the ground Roger's government claim was untimely.  It found the latest the defamation

claims could have accrued was December 6, 2013, when Roger read the letter from the hospital saying the jail website showed he had been arrested for a felony. From that date, he had six months to file a claim for damages with the County, but did not end up filing until September 2014. The court denied the motion with regard to the writ and declaratory relief claims, concluding respondents had failed to make an evidentiary showing the claims were moot.

Roger later moved for summary judgment on those two remaining causes of action. He argued respondents had no affirmative defenses and that the undisputed evidence showed they had falsely reported his civil contempt charge and had no policy in place to prevent future false reports. He acknowledged his record had ultimately been changed to reflect a civil violation, but argued the fact they refused to admit their prior entries were erroneous and their lack of a procedure for processing similar violations in the future demonstrated his claims were not moot. Finally, he argued that even if his claims were moot and he could not obtain direct relief, he was still entitled to attorney fees under Code of Civil Procedure section 1032, subdivision (a)(4), because he had achieved his "main litigation objective" when respondents corrected his record. (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 877 ["a party who is denied direct relief on a claim may nonetheless be found to be a prevailing party if it is clear that the party has otherwise achieved its main litigation objective"].)

In opposing Roger's motion, respondents submitted another declaration from Dreier. In this declaration, Dreier said the reason the sheriff's department had

13

inaccurately reported to the DOJ that Roger had suffered a felony charge was because the "Livescan system, which has charge tables updated by the [DOJ], only permits a CCP Section 1209(a)(5) violation to be entered as either a criminal misdemeanor or felony." As a result of the DOJ's charge tables, Dreier said, a felony or misdemeanor were the "only two options available to record [Roger's charge]." She said they had ultimately fixed the error by "manually record[ing]" his charge "as a civil commitment with no severity" and faxing the correction to the DOJ. Dreier also said: "Based on my understanding, as a result of this case, the Court system itself has changed its procedure so that a CCP Section 1209(a)(5) violation will now be manually entered by hand instead of electronically through the Livescan equipment."

Respondents argued that Dreier's declaration demonstrated Roger's claims were moot and the booking error was "not capable of repetition" because "[t]he Court system has changed its procedure . . . by requiring that Cal. Civ. Proc. § 1209(a)(5) civil violations be manually entered by hand instead of electronically through the Livescan equipment."

At the hearing on Roger's motion, his counsel argued Dreier's statement that the court had changed its procedure for booking inmates charged with civil contempt lacked foundation. The court denied the motion. It concluded there was no legal basis for writ relief because respondents had not failed to perform an act despite a clear ministerial duty to do so. "For example," the court reasoned, "there is no statute that imposes upon [respondents] a duty to create or maintain its records in a specific matter." The court

14

concluded there was also no legal basis for declaratory relief because there was no actual controversy at issue. Quoting, *County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 606, the court explained that declaratory relief "operates prospectively to *declare future rights, rather than to redress past wrongs*," and found the incorrect booking entries were past wrongs. The court concluded, "the relief requested here would serve no practical purpose by resolving a controversy so that the parties can conform their conduct to the law and prevent future litigation [between them]."

On March 12, 2018, the parties filed a stipulation agreeing the court could dismiss the remaining two claims with prejudice and enter judgment. Roger then filed a timely appeal challenging the dismissal of each of his claims.

## II

## ANALYSIS

### A. *General Principles and Standard of Review*

A trial court properly grants summary judgment when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) We review the trial court's ruling on a summary judgment motion de novo, liberally construing the evidence in favor of the party opposing the

15

motion and resolving all doubts about the evidence in favor of the opponent. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.)

We also review de novo the trial court's order sustaining a demurrer without leave to amend, independently determining "whether the complaint sets forth facts sufficient to state a cause of action." (*Doheny Park Terrace Homeowners Assn., Inc. v. Truck Ins. Exchange* (2005) 132 Cal.App.4th 1076, 1085 (*Doheny*).)

B.     *The Defamation Claims*

1.     *The Government Claims Act*

Roger argues the trial court erred when it dismissed the defamation causes of action based on its conclusion he failed to file a timely claim for damages under the Government Claims Act. He argues the County waived its ability to assert a late-claim defense in litigation because it failed to notify him of the defect as required by the Act. We agree.

"Before a complaint may be filed against a public entity, the entity must be presented with a claim in the form required by the Government Claims Act." (*Westcon Construction Corp. v. County of Sacramento* (2007) 152 Cal.App.4th 183, 190.) "It is well settled that the purpose of the [Government Claims Act] 'is to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation. [Citations.]' [Citation.] To achieve this purpose, section 911.2 requires a claimant to present a claim to the public

entity within a specified time after accrual of the cause of action." (*Phillips v. Desert Hospital Dist.* (1989) 49 Cal.3d 699, 705 (*Phillips*).)

As relevant here, a claim "relating to a cause of action for death or for injury to [the] person" must be presented within "six months after the accrual of the cause of action." (§ 911.2, subd. (a).) "[A] cause of action for defamation accrues at the time the defamatory statement is 'published,'" and "publication occurs when the defendant communicates the defamatory statement to a person other than the person being defamed." (*Shively v. Bozanich* (2003) 31 Cal.4th 1230, 1247.) However, in circumstances where a reasonably diligent plaintiff could not have been expected to know about the publication (for example, because it was contained in a personnel file), the accrual date tolls until the plaintiff discovers or reasonably should have discovered the publication. (*Id.* at p. 1248; *Schneider v. United Airlines, Inc.* (1989) 208 Cal.App.3d 71, 77.) We need not decide whether Roger's claim accrued on October 16, 2013—when the charge was published in the JIMS database and sent to the DOJ—or on December 6, 2013—when he read the letter from the hospital regarding his felony charge—because in either case his September 2014 claim was late.

The waiver provision of the Government Claims Act, section 911, states that "[a]ny defense as to the sufficiency of the claim based upon a defect or omission in the claim as presented is waived by failure to give notice of insufficiency." Section 911.3 contains another waiver provision, specific to timeliness, which provides that when a claim is untimely and there is no application for leave to present a late claim under

17

section 911.4, the public entity must give notice of the defect, or waive it. "The notice must warn the person making the government claim that his or her only recourse is to apply without delay to the public entity for leave to present a late claim." (*Estill v. County of Shasta* (2018) 25 Cal.App.5th 702, 709 (*Estill*).) It is well established that "[f]ailure to give the warning within 45 days after the claim was presented results in waiver of the defense that the government claim was untimely. (§ 911.3, subd. (b).)" (*Ibid.*; see also *Phillips*, *supra*, 49 Cal.3d at pp. 705-706 ["Failure to provide such notice of timeliness waives a public entity's defense based on untimeliness even if the claim is otherwise insufficient"].)

In *Phillips*, our Supreme Court concluded the defendant public hospital district waived their late-claim defense because they "failed to notify plaintiffs of any timeliness defects" at the claim stage. (*Phillips*, *supra*, 49 Cal.3d at p. 711.) The Court explained the rationale behind the waiver rule— it "encourages public entities to investigate claims promptly, and to make and notify claimants of their determinations, thus enabling the claimants to perfect their claims." (*Id.* at p. 706.)

Here, as in *Phillips*, the County did not notify Roger that his claim was late. Instead, it summarily rejected his claim on the merits. As a result, the County waived its ability to raise the lateness of Roger's claim as a defense in this lawsuit, and the trial court erred in accepting such a defense.

The County argues the waiver rule does not apply in this instance because Roger represented an accrual date of May 1, 2014 on the claim form, and it was only during this

18

litigation that it learned his claim had in fact accrued upon his arrest, in October 2013. The County argues it should be able to rely on the date the claimant provides and should not be required to perform an independent investigation to determine if that date is correct. We are unpersuaded.

First of all, Roger did not represent the accrual date was May 1, 2014. Rather, he accurately answered the only timing question the County's claim form asked, which was when his "damage or injury" occurred. But the date of injury is not the relevant timing question under the Government Claims Act, the date of claim accrual is. (§ 910, subd. (c) [claims must include "[t]he date, place and other circumstances *of the occurrence or transaction which gave rise to the claim asserted*"], italics added.) Although the distinction between accrual and occurrence of injury may not matter for many torts (such as negligence causing personal injury), the distinction is important for a tort like defamation, where the claim accrues upon publication but the injury caused by the publication can occur much later. Thus, the issue is not that Roger gave the wrong answer to or mislead the County, it's that the County's form asks the wrong question.[2] We cannot hold the claimant responsible for this issue with the County's form.

Indeed, doing so would be contrary to the waiver provisions in the Government Claims Act, which were intended "1) to provide relief for technical noncompliance, 2) to allow cases to be heard on their merits, and 3) to protect claimants from *traps for the*

___

[2] For example, California's form for claims against the state—which we judicially notice at Roger's request (Evid. Code, § 452, subd. (c))—asks claimants to "State the exact date of the incident that you believe caused the damage or injury." This question, unlike the question in the County's form, is designed to elicit the accrual date.

*unwary.*" (*Sykora v. State Dept. of State Hospitals* (2014) 225 Cal.App.4th 1530, 1537, italics added.) It would set just such a trap to allow public entities to ask about the time of the injury at the claims stage to avoid their obligation to notify claimants of timing deficiencies in their claims, and then rely on the accrual date during litigation to avoid waiver for failing to notify such claimants.

Second, although the County's form does not ask for an accrual date, Roger still provided one in his claim. He explained that the cause of his May 2014 injury was respondents' inaccurate booking entry and subsequent publication of his arrest on their website. He also attached to his claim a printout of the JIMS booking entry reflecting he had been arrested and booked for a felony on October 16, 2013. Seeing as that printout was the first of four attachments, even a cursory claim review should have identified the accrual date. Indeed, the County's claims adjuster conceded as much in her declaration, when she said that had Roger provided the October 16, 2013 booking date in his claim, the County *would have known* his claim was late and deemed it so. Seeing as Roger did provide that information, we find the County's argument that his claim misled them about the accrual date disingenuous. Roger's claim—as presented—was untimely, and the County should have informed him so.

Finally, the County's attempt to avoid application of the waiver rule by arguing it is not responsible for reviewing the documents Roger submitted with his claim contravenes the purpose behind the waiver rule, which is to encourage public entities to "investigate claims promptly, . . . and notify claimants of their determinations, thus

20

enabling the claimants to perfect their claims." (*Phillips*, *supra*, 49 Cal.3d at p. 706.) Simply put, the County cannot have it both ways. It cannot say Roger should have provided the booking date in his claim so it would have known his claim was late, then disclaim responsibility for reviewing the documents he did submit which provide that very date.

While a public entity is not *required* to investigate a claim for timeliness, it fails to do so at the risk of waiving a timeliness defense in litigation. "[T]he claims-presentation requirements encourage a public entity to timely investigate a claim. [Citation.] In particular, the notice and defense-waiver provisions (§§ 910.8, 911, 911.3) furnish strong incentive for a public entity to investigate a claim even if they do not require a public entity to do so." (*Estill*, *supra*, 25 Cal.App.5th at pp. 709-710.) Had the County notified Roger his claim was late, he would have been able to submit an application to file a late claim under section 911.4. He could have explained in that application why he had not discovered his claim for damages until the fall of 2014, when he discovered he had a criminal record with the DOJ as a result of the October 2013 arrest. If the County denied the application, he could have petitioned the trial court for relief under section 946.6. (See § 946.6, (c)(1) [court shall grant petition to file late claim if "[t]he failure to present the claim was through mistake, inadvertence, surprise, or excusable neglect"].) By failing to notify him of the defect, the County deprived him of this opportunity to provide an excusable justification for the lateness of his claim. We therefore conclude the County

21

waived the late-claim defense and the trial court erred in dismissing the defamation claims.

### 2. *Prosecutorial immunity*

Respondents argue the prosecutorial immunity in section 821.6 supplies an alternate ground for upholding the trial court's dismissal of the defamation claims. This argument failed in the trial court, and it fails here.[3] Nothing about respondents' conduct that gave rise to this case invokes prosecutorial immunity.

Section 821.6 provides: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Under section 815.2, if the employee is immune from liability, so is the public entity.[4]

"Immunity under Government Code section 821.6 is not limited to claims for malicious prosecution, but also extends to other causes of action arising from conduct protected under the statute, including defamation and intentional infliction of emotional distress." (*Gillan v. City of San Marino* (2007) 147 Cal.App.4th 1033, 1048 (*Gillan*).) The issue is whether respondents' publication of false charges against Roger was part of the "prosecution" of a judicial proceeding within the meaning of section 821.6.

---

[3] After the trial court ruled the prosecutorial immunity did not apply, the County unsuccessfully petitioned this court to overturn that ruling. We denied the County's writ petition on September 8, 2016.

[4] Section 815.2, subdivision (b) says: "'Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

*Sullivan v. County of Los Angeles* (1974) 12 Cal.3d 710, 719 (*Sullivan*) is instructive. In that case, our Supreme Court considered whether the immunity applied to a sheriff's holding the plaintiff in jail beyond his term. The Court first looked to the plain meaning of the word "prosecute." "According to Webster's Third New International Dictionary (1961) . . . 'prosecute' means 'to institute legal proceedings against; *esp*: to accuse of some crime or breach of law or to pursue for redress or punishment of a crime or violation of law in due legal form before a legal tribunal.'" (*Ibid.*) The Court turned to the purpose of section 821.6—to protect public employees from liability for malicious prosecution, which "'consists of initiating or procuring the arrest and prosecution of another under *lawful process*, but from *malicious motives* and *without probable cause*.'" (*Id.* at p. 720.) The test for whether a public employee has committed malicious prosecution, and is therefore immune under section 821.6, "is whether the [employee] was actively instrumental in causing the prosecution." (*Sullivan*, at p. 720.) The Court noted that "the suits against government employees or entities cited by the Senate Committee in commenting upon section 821.6 all involve the government employees' acts in filing charges or swearing out affidavits of criminal activity against the plaintiff." (*Ibid.*)

The Court concluded that both the plain language of section 821.6 and its legislative history compelled a conclusion that prosecutorial immunity did not apply to the sheriff's failure to timely release the plaintiff from custody. (*Sullivan*, *supra*, 12 Cal.3d at p. 720.) The Court explained, "'section 821.6 codified the recognized common

23

law immunity of prosecutors and other law enforcement officers from malicious prosecution actions, in order to prevent interference with their *discretionary and quasi-judicial responsibility for institution and prosecution of enforcement proceedings*.'" (*Id.* at p. 722, italics added.) It concluded the "negligence in the [sheriff's] ministerial recordkeeping" that resulted in the plaintiff being held in custody beyond his term was not "the kind of discretionary determination—to initiate [or prosecute] proceedings against the plaintiff—which the immunity was designed to safeguard." (*Ibid.*)

Similarly here, we conclude section 821.6 immunity does not apply because the conduct at issue amounts to ministerial recordkeeping—it is neither discretionary nor prosecutorial. A discretionary act requires "'"'personal deliberation, decision and judgment,'"'" whereas a ministerial act consists of performing "'"'a duty in which the officer is left no choice of his own.'"'" (*Johnson v. State of California* (1968) 69 Cal.2d 782, 788]; see also *Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916 [ministerial acts are those performed "without regard to [the actor's] own judgment or opinion concerning such act's propriety or impropriety, when a given state of facts exists"].) The discretionary act in this case was the trial court's determination that Roger had committed civil contempt of court by refusing to comply with a discovery order. Respondents' ensuing acts of booking Roger into custody and transmitting that booking information to the DOJ involved no similar judgment call and were instead purely ministerial. Their job was simply to enter the violation the trial court

24

had issued into their database and relay that information to the DOJ. That they performed that task incorrectly does not trigger section 821.6 immunity.

In addition, respondents played no role in prosecuting Roger for violating the civil discovery order in the underlying commercial lawsuit. The court-appointed receiver argued Roger was not complying with the discovery order, and the trial court, as fact finder, agreed. Respondents' role in the contempt violation was limited and tangential. They were responsible for booking and housing Roger for the duration of his failure to comply with the discovery order.

While courts have held that "section 821.6 immunizes not only the act of filing or prosecuting a judicial or administrative complaint, but also extends to actions taken in preparation for such formal proceedings" (*Gillan*, *supra*, 147 Cal.App.4th at p.1048), this broad view of prosecutorial immunity does not help respondents, because they also played no investigatory role in this matter. Again, the receiver and the trial court were the only parties who did so. As a result, the County's reliance on *Amylou R. v. County of Riverside* (1994) 28 Cal.App.4th 1205—where police officers were immune from tort liability arising out of statements they made during *their* criminal investigation—is unhelpful.

The other cases respondents rely on are similarly unhelpful, as they all involve discretionary acts performed in the course of the defendants' own investigation or prosecution. (*Kayfetz v. State of California* (1984) 156 Cal.App.3d 491, 496 [immunity applied to medical board's publication regarding the outcome of its disciplinary action

25

against plaintiff]; *Kemmerer v. County of Fresno* (1988) 200 Cal.App.3d 1426, 1436-1437 [immunity applied to actions the public agency employer took in investigating and disciplining the plaintiff employee]; *Citizens Capital Corp. v. Spohn* (1982) 133 Cal.App.3d 887, 889 [immunity applied to statements the state prosecutor and regulatory agency officials made in press releases regarding their investigation of the plaintiff]; *Gillan*, *supra*, 147 Cal.App.4th at p. 1050 [immunity applied to statements police officers made in press releases regarding their investigation of the plaintiff].)  Of these cases, the medical board's report of the disciplinary action against the plaintiff in *Kayfetz* may be the most similar to the incorrect recording of Roger's violation, but the case is still a far cry from analogous.  In *Kayfetz*, the medical board was reporting on the results of *its own* disciplinary proceeding, so the report could be seen as part of the prosecution process.  We reject the argument that section 821.6 applies.

C.      *Writ and Declaratory Relief*

In denying Roger's motion for summary judgment on the writ of mandate and declaratory relief claims, the trial court concluded the claims were moot because respondents corrected their mistakes during the litigation.  The trial court also concluded it could not direct respondents to develop a procedure for accurately booking inmates for civil contempt because "there is no statute that imposes upon [respondents] a duty to create or maintain . . . records in a specific manner."  Roger argues these rulings were erroneous because respondents' booking procedure for civil contempt of court is a matter of public importance and the mistakes that occurred in his case are likely to recur as

26

respondents have not developed a procedure for accurately recording civil contempt violations. We agree.

Although writs of mandate and judicial declarations are different types of relief with different requirements, they both require an actual controversy and they both contain a mootness exception for issues of public importance that are likely to recur. "A traditional writ of mandate under Code of Civil Procedure section 1085 is a way to compel a public entity to perform a legal, typically ministerial, duty." (*Weiss v. City of Los Angeles* (2016) 2 Cal.App.5th 194, 204.) To obtain a writ of mandate under Code of Civil Procedure section 1085, a petitioner must show, among other things, "that the respondent has failed to perform an act despite a clear, present and ministerial duty to do so, and that the petitioner has a clear, present and beneficial right to that performance." (*Riverside Sheriff's Assn. v. County of Riverside* (2003) 106 Cal.App.4th 1285, 1289.) The requirement of a ministerial duty to act "may be greatly relaxed, if not virtually abandoned, where the question is one of public interest." (8 Witkin, Cal. Procedure (5th ed. 2008) Extraordinary Writs, § 84, pp. 970-971.) "'As a general proposition courts will not issue a writ of mandate to enforce an abstract right of no practical benefit to petitioner, or where to issue the writ would be useless, unenforceable or unavailing. [Citation.] However, where the problem presented and the principle involved are of great public interest, the courts have deemed it appropriate to entertain the proceedings rather than to dismiss the same as being moot.' [Citations.]" (*Ellena v. Department of Ins.* (2014) 230 Cal.App.4th 198, 207; see also *Californians for Alternatives to Toxics v.*

27

*Department of Pesticide Regulation* (2006) 136 Cal.App.4th 1049, 1069 [trial court erred in dismissing the plaintiff's mandamus claims because although the claims were moot, "[t]his case raises important issues of public policy that are likely to recur"].)

Code of Civil Procedure section 1060 authorizes "[a]ny person . . . who desires a declaration of his or her rights or duties with respect to another . . . in cases of actual controversy" to seek declaratory relief from the court.  "A declaratory judgment "'serves to set controversies at rest before they lead to repudiation of obligations, invasion of rights or commission of wrongs; in short, the remedy is to be used in the interests of preventive justice, to declare rights rather than execute them.' [Citations.]"'" (*County of San Diego v. State of California*, *supra*, 164 Cal.App.4th at pp. 607-608.)  A claim for declaratory relief "'becomes moot when some event has occurred which "deprive[s] the controversy of its life." [Citation.]  The policy behind a mootness dismissal is that "courts decide justiciable controversies and will normally not render advisory opinions."' [Citations.]  The voluntary cessation of allegedly wrongful conduct destroys the justiciability of a controversy and renders an action moot *unless there is a reasonable expectation the allegedly wrongful conduct will be repeated*." (*Center for Local Government Accountability v. City of San Diego* (2016) 247 Cal.App.4th 1146, 1157 (*San Diego*), italics added.)

Here, regardless of whether a statute specifically compels respondents to keep accurate booking records, they have a duty to do so.  Respondents admitted as much during discovery, when they conceded they owed Roger a duty to accurately report

28

information about his violation in its database and to the DOJ. Moreover, it should go without saying that the issue in this litigation is of public importance, as citizens have a significant interest in the accuracy of their criminal record.

That respondents corrected Roger's record partway through this litigation does not eliminate the legal bases for writ and declaratory relief because, on this record, "there is a reasonable expectation the allegedly wrongful conduct will be repeated." (*San Diego*, *supra*, 247 Cal.App.4th at p. 1157.) Respondents admitted they have no policy for recording civil contempt of court violations and admitted their practice has been to designate such violations as either a felony or a misdemeanor—both of which are inaccurate and would create a false criminal record for an inmate when the County relayed the booking information to the DOJ. In addition to this admission, respondents have presented no evidence they have or will develop a policy to accurately record such violations. As a result, they have not shown the errors that occurred in this case are not likely to recur.

Respondents argue Dreier's declaration supplies the evidence that they have developed a policy for accurately recording civil contempt of court violations to reflect their civil nature. We disagree. Dreier did not say the County or sheriff's department has implemented a new procedure to avoid designating civil contempt violations as criminal charges. Instead, she said they had fixed the error in *Roger's record* by "manually record[ing]" his charge "as a civil commitment with no severity" and faxing the corrected form to the DOJ. As to any sort of procedure going forward, all Dreier said was: "Based

29

on my understanding, as a result of this case, *the Court system* itself has changed its procedure so that a CCP Section 1209(a)(5) civil violation will now be manually entered by hand instead of electronically through the Livescan equipment." (Italics added.) There are two evidentiary problems with this statement.

As an initial matter, because the statement is not based on Dreier's experience or personal knowledge, but on her "understanding," it is insufficient to support a finding as to the truth of what she said. (E.g., *Sykora v. State Dept. of State Hospitals*, *supra*, 225 Cal.App.4th at p. 1535 [assertions "*upon information and belief*" are insufficient to support a factual finding]; *Overland Plumbing, Inc. v. Transamerica Ins. Co.* (1981) 119 Cal.App.3d 476, 483 [declarations followed by the phrase "To the best of my knowledge" or upon "information and belief" are insufficient because they "indicate[] something less than the 'personal knowledge' required under Code of Civil Procedure section 437c"].)

Second, Dreier's statement is not about what *respondents* have done to ensure they accurately record and relay to the DOJ civil contempt violations. Rather, it conveys her understanding of *the court's* procedures only. Without more explanation from respondents, we would have to speculate as to whether any change in the state court system regarding designating civil contempt violations would also affect a change at the county level. As far as we can tell from Dreier's declaration, the court *may have* adopted a policy of manually designating civil contempt violations to reflect their civil nature, but her statement does not support a finding that *respondents* now have a procedure in place to ensure they accurately record and report such violations. We find it telling she focused

30

on the court's procedures, not her employer's. Respondents' evidence leaves a gap that cannot be filled by their counsel's reassurances the issue has been resolved. We therefore reverse the judgment dismissing the writ and declaratory relief claims.

D.     *Section 1983 Claim*

Roger argues the court erred in sustaining the demurrer to his section 1983 claim. As a threshold matter, we reject respondents' contention he failed to preserve this challenge because he did not specifically identify the court's order sustaining the demurrer in his notice of appeal. "A prior nonappealable order or ruling need not be specified in the notice of appeal from a subsequent appealable judgment." (Eisenberg et al., Cal. Practice Guide, Civil Appeals and Writs (The Rutter Group 2018) ¶ 3:119, p. 3-52, citing *Gavin W. v. YMCA of Metropolitan Los Angeles* (2003) 106 Cal.App.4th 662, 669.) Because "[o]rders sustaining demurrers are not appealable" (*Hill v. City of Long Beach* (1995) 33 Cal.App.4th 1684, 1695, citing Code Civ. Proc., § 904.1), Roger was not required to separately identify it in his notice of appeal.

Turning to the merits, section 1983 states in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." "[L]ocal governments, like every other § 1983 'person,' by the very terms of

31

the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." (*Monell v. Department of Social Services* (1978) 436 U.S. 658, 690-691.) As relevant here, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." (*Harris*, *supra*, 489 U.S. at p. 388.)

Roger's amended section 1983 claim alleged that respondents had no procedure for accurately booking inmates who have committed civil contempt, that they knew they had no such procedure, and that these facts demonstrated their training "was so inadequate as to amount to deliberate indifference" to such inmates' civil rights. The trial court sustained respondents' demurrer on the basis that Roger had not "set forth facts establishing the nature of [their] training program and that it was so obviously inadequate as to demonstrate that [their policymakers made a conscious choice to disregard citizens' constitutional rights." We conclude the court required Roger to know too much about the respondents' booking procedure at the pleading stage.

To survive demurrer, a plaintiff is "only required to plead ultimate facts. . . . Whether [they] can produce at trial, or in response to a motion for summary judgment, *evidence* that will in fact support all or any of [their] allegations . . . *is another matter*." (*Doheny*, *supra*, 132 Cal.App.4th at p. 1098, italics added.) ""[A] plaintiff is required only to set forth the essential facts of his case with reasonable precision and with

32

particularity sufficient to acquaint a defendant with the nature, source and extent of his cause of action. [Citation.] If there is *any reasonable possibility* that the plaintiff can state a good cause of action, it is error to sustain a demurrer without leave to amend. [Citations.]" . . . "The particularity required in pleading facts depends on the extent to which the defendant in fairness needs detailed information that can be conveniently provided by the plaintiff; *less particularity is required where the defendant may be assumed to have knowledge of the facts equal to that possessed by the plaintiff*. [Citation.]" . . . There is no need to require specificity in the pleadings because 'modern discovery procedures necessarily affect the amount of detail that should be required in a pleading.'" (*Id.* at p. 1099, italics added.)

Roger's allegations satisfied this fair notice test. He alleged respondents had no procedure for booking inmates who have committed civil contempt as anything other than felons or misdemeanants. He also alleged they knew this lack of procedure would result in false charges against this particular subset of inmates. Those allegations were as specific as they could be at the pleading stage, without the benefit of discovery. Roger is not privy to the details of respondents' booking procedures, but respondents presumably have access to that information. Roger's allegations alerted respondents to the fact their booking policies for civil contempt would be at issue in the litigation, and thus would be the subject of discovery. "[A] claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss 'even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy,

33

custom, or practice.'" (*Karim-Panahi v. Los Angeles Police Dept.* (9th Cir. 1988) 839 F.2d 621, 624, quoting *Shah v. County of Los Angeles* (9th Cir. 1986) 797 F.2d 743, 747.)

On appeal, respondents argue Roger's claim fails not because his allegations were too vague, but because damage to reputation is not actionable under section 1983. While respondents are correct that "[d]amage to reputation alone is not actionable under [section] 1983," a plaintiff has an actionable claim if he can present "evidence that he lost his job *because of* the defamatory statements." (*Hart v. Parks* (9th Cir. 2006) 450 F.3d 1059, 1069-1070.) This is precisely what Roger has alleged—that the false booking entry and transmission of a felony charge to the DOJ directly resulted in his loss of employment.

Finally, respondents argue Roger's claim fails because "his arrest was based on a lawful Court order supported by probable cause," and in such cases a plaintiff cannot state a section 1983 claim. But this rule applies when the plaintiff is alleging their injury is the deprivation of their liberty (i.e., they were arrested but later determined to be innocent, so they never should have spent time in custody). (E.g., *Hart v. Parks*, *supra*, 450 F.3d at p. 1069, citing *Cabrera v. City of Huntington Park* (9th Cir.1998) 159 F.3d 374, 380 ["'To prevail on his section 1983 claim for false arrest . . . [the plaintiff] would have to demonstrate that there was no probable cause to arrest him'"].) The rule has no application in circumstances like this, where the plaintiff is not alleging false arrest, but rather defamation resulting in loss of employment. We therefore conclude the trial court should not have sustained respondents' demurrer to the section 1983 claim.

# III

# DISPOSITION

We reverse the judgment dismissing the defamation, defamation per se, writ of mandamus, declaratory relief, and section 1983 claims. Respondents shall bear appellant's costs.

SLOUGH
                                                                    J.

We concur:

McKINSTER
        Acting P. J.

CODRINGTON
                J.

Filed 1/22/20

CERTIFIED FOR PUBLICATION

COURT OF APPEAL -- STATE OF CALIFORNIA

FOURTH DISTRICT

DIVISION TWO

## **ORDER**

DOUGLAS J. ROGER,

   Plaintiff and Appellant,

v.

COUNTY OF RIVERSIDE et al.,

   Defendants and Respondents.

E070776

(Super.Ct.No. PSC1501512)

The County of Riverside

ORDER CERTIFYING OPINION
FOR PUBLICATION

THE COURT

     The request for publication filed on January 17, 2020 is GRANTED. The opinion meets the standard for publication as specified in California Rules of Court, rule 8.1105(c). It is ORDERED that the opinion filed in this matter on January 9, 2020, be certified for publication.

<u>SLOUGH            </u>
                                               J.

We concur:

<u>McKINSTER        </u>
        Acting P. J.

<u>CODRINGTON       </u>
           J.